**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

**CARGO TRANSPORTATION SERVICES, INC.,**

Debtor.
_____________________________________/

**Emergency Hearing:**
**January 19, 2011 at 1:30 p.m.**

CHAPTER 11

CASE NO.: 8:11-bk-432-MGW

# CREDITOR COMERICA BANK'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO SELL POSTPETITION ACCOUNTS, OBTAIN POSTPETITION FINANCING, AND GRANT SENIOR LIENS, SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363, 364(c), and 364(d) and F.R.B.P. 4001

Comerica Bank ("Comerica"), a creditor and the senior secured lender in the above-reference bankruptcy case, files this objection to the *Debtor's Emergency Motion for Authority to Sell Postpetition Accounts, Obtain Postpetition Financing, and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 363, 364, and 364(d) and F.R.B.P. 4001* (Doc. 23, "*Motion for DIP Financing*"), filed January 17, 2011.

To briefly summarize Comerica's argument, as more fully set forth herein, Comerica opposes the *Motion* for four reasons: (1) the relief requested in the *Motion for DIP Financing* is inconsistent with relief provided in the form *Cash Collateral Order*, uploaded to the Court on January 18, 2011; (2) the relief requested is not interim, but rather seeks a final determination from the Court as to debtor-in-possession financing ("DIP Financing"); (3) the relief requested in the *Motion* is not authorized by the Bankruptcy Code[1] and, specifically, is in violation of 11

---

[1] 11 U.S.C. §§ 101 *et seq.*

U.S.C. §§ 364(d)(1)(A) and (B); and (4) the Debtor has not carried its burden of proof to show that it is entitled to the relief requested.

## I. BACKGROUND

On January 12, 2011, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Also on January 12, 2011, the Debtor filed an *Emergency Motion to Use Cash Collateral* (Doc. 2). On January 13, 2011, an emergency hearing was held which resulted in a proposed *Cash Collateral Order*. In relevant part, the *Cash Collateral Order* provides adequate protection to Comerica by providing Comerica with a replacement lien with the same validity, priority, and extent as Comerica's prepetition liens. Prepetition, the Debtor executed a Master Revolving Note in the amount of $10,150,000.00 in favor of Comerica, which is secured by all of the personal property of the Debtor, including the Debtor's accounts receivable.

On January 17, 2011, the Debtor filed the instant *Motion for DIP Financing*. In relevant part, the *Motion for DIP Financing* seeks "to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor shall be secured by liens on and security interests in all postpetition property of the Debtor pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition (if any) and postpetition liens or other interests encumbering postpetition property of the Debtor[.]" *Motion for DIP Financing* at 2-3. Under the terms proposed in the *Motion for DIP Financing*, Comerica's replacement lien would be primed by a lien given to Advance Business Capital, LLC ("DIP Factor"), in direct contravention to the adequate protection given to Comerica in the *Cash Collateral Order*.

In support of the *Motion for DIP Financing*, the Debtor asserts that Comerica enjoys a substantial equity cushion. *See Motion for DIP Financing* at 4. However, any such supposed

equity cushion is illusory because the accounts receivable have been overvalued: the Debtor does not take into account old debts that are uncollectable; or the risk of uncollectablity of recent debts. In short, Comerica is theoretically oversecured, but only marginally so. Additionally, under the terms proposed in the *Motion for DIP Financing*, interest will further erode the equity cushion over time.

Importantly, Comerica has offered DIP Financing terms to the Debtor that are more favorable that those offered by the DIP Factor. The terms of Comerica's DIP financing offer to the Debtor are contained in the letter offer ("Comerica's Letter Offer") attached hereto as Exhibit 1. Specifically, Comerica has offered to provide DIP Financing to the Debtor, with a release of any claim against Comerica, at the Non-Default Rate on the Debtor's pre- and post-petition debt; that is, 0.5% over the prime rate. This rate and terms are substantially lower than the rate offered by the DIP Factor and would result in significant savings to the estate.

## II. ARGUMENT

### A. The Relief Requested in the *Motion for DIP Financing* is Inconsistent with the Relief Granted in the *Cash Collateral Order*

In the *Cash Collateral Order*, Comerica was provided adequate protection in the form of a replacement lien to the same validity, priority, and extent as it had prepetition. Prepetition, Comerica was the senior secured lender with a first priority blanket lien on all of the Debtor's assets, including accounts receivable. In contravention of the *Cash Collateral Order*, the Debtor now seeks to prime Comerica's lien and sell Comerica's cash collateral. The relief requested in the *Motion for DIP Financing* would undo the adequate protection afforded to Comerica in the *Cash Collateral Order*. The post-petition financing provisions in § 364 were never intended to allow a debtor to eviscerate adequate protection terms that were provided in an order under § 363 authorizing the use of cash collateral that was issued three days earlier.

Moreover, any adequate protection in the form of a supposed equity cushion is illusory. Even according to the Debtor's numbers, which Comerica disputes, the amount proposed to be authorized by DIP Facility exceeds the supposed equity cushion. *See Motion for DIP Financing* at 4. Moreover, as explained above in Section I, the Debtor overestimates the equity cushion by overvaluing the accounts receivable. Taking the overvaluation of the receivables into account, Comerica is only marginally oversecured. Furthermore, any equity cushion that does exist will be eroded over time by the interest on the Credit Facility. Given these circumstances, the adequate protection that was given to Comerica under the terms of the *Cash Collateral Order* would be taken away if the terms of the *Motion for DIP Financing* were to be approved. If the relief requested in the *Motion for DIP Financing* is granted, then Comerica's cash collateral could no longer be used under the terms of the *Cash Collateral Order* because the adequate protection on which it is based would no longer exist.

**B. The Relief Requested Is Final, Not Interim**

In the *Motion for DIP Financing*, the Debtor seeks "to obtain purchase price advances on a secured basis from [the DIP Factor] in the principal amount of up to $2,000,000.00 . . . ." *Motion for DIP Financing* at 2, 6 (providing that the DIP Facility "will be in the maximum aggregate principal amount of $2,000,000.00"). Unlike the *Cash Collateral Order*, which was granted on an interim basis, the *Motion to Approve DIP Financing* in essence seeks final relief by obtaining approval of "up to" $2 million in post-petition financing. The relief sought in the *Motion for DIP Financing* is final, not interim, and accordingly the Debtor should be required to show that immediate and irreparable harm will result without post-petition financing in the full amount of $2 million. In addition, approving the financing in the full amount now would make a

final hearing a pointless exercise. The Debtor should be required to make the appropriate evidentiary showing.

## C. The Relief Requested Does Not Comply with Section 364(d)

Section 364 permits the Court to "authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if— (A) the trustee is unable to obtain credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior lien is proposed to be granted." 11 U.S.C. § 364(d)(1). As § 364(d)(1) is written in the conjunctive, both requirements must be shown before a priming lien can be approved. *See Suntrust Bank v. Den-Mark Const., Inc. (In re Den-Mark Const., Inc.)*, 406 B.R. 683, 688-89 (E.D.N.C. 2009). The Debtor has not made either of the required showings.

First, the Debtor has not shown that it is unable to obtain credit on terms other than those proposed in the *Motion for DIP Financing*. In fact, Comerica has offered to provide the Debtor with credit on terms that are more favorable than those offered by the DIP Factor. In light of Comerica's offer to provide credit on more favorable terms, the Debtor cannot show that it was "unable to obtain credit otherwise."

Second, the Debtor has not established that Comerica's interest in the accounts receivable will be adequately protected. In addition to the reasons articulated above in Section II(A), the sale of the accounts receivable completely undermines any adequate protection that could be provided to Comerica.[2]

---

[2] Additionally, it appears that the sale of the accounts receivable does not comply with 11 U.S.C. § 363(f).

## D. The Debtor Has Failed to Carry Its Burden

The language of § 364(d) explicitly places the burden of proof on the Debtor with respect to adequate protection. *See* 11 U.S.C. § 364(d)(2). In addition, the Debtor has the burden to establish that it is unable to obtain credit without priming Comerica. *See In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) (citing *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552 (3d Cir. 1994). The Debtor has failed to carry its burden on both of the required showings.

## III. CONCLUSION

As argued above, the relief requested in the *Motion for DIP Financing* is inconsistent with relief provided in the form *Cash Collateral Order*, and it effectively eviscerates the adequate protection that was previously provided to Comerica. In addition, the Debtor requests relief which is essentially final in nature, and which is not authorized by § 364. As the Debtor has failed to meet its burden under § 364, the *Motion for DIP Financing* should be denied.

WHEREFORE Comerica requests that the *Motion for DIP Financing* be denied in its entirety.

**BROAD AND CASSEL**
Attorneys for Chapter 7 Trustee
390 North Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 839-4200
Facsimile: (407) 650-0927

By: */s/ Roy S. Kobert*
Roy S. Kobert, P.A.
Florida Bar No. 0777153
rkobert@broadandcassel.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF on January 19, 2011 to all parties receiving CM/ECF Service.

**BROAD AND CASSEL**
Attorneys for Chapter 7 Trustee
390 North Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 839-4200
Facsimile: (407) 650-0927

By: */s/ Roy S. Kobert*
Roy S. Kobert, P.A.
Florida Bar No. 0777153
rkobert@broadandcassel.com