**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**CARGO TRANSPORTATION SERVICES, INC.,**

**Debtor.**
_____________________________ /

**Chapter 11**

**Case No. 8:11-bk-00432-MGW**

**INTERIM ORDER (1) GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (2) GRANTING *ORE TENUS* JOINT MOTION OF THE DEBTOR AND COMERICA BANK FOR POSTPETITION FINANCING**

THIS CASE came on for a continued interim hearing on January 19, 2011, at 1:30 p.m. (the "**Interim Hearing**"), upon the Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure [Doc. No. 2] (the "**Cash Collateral Motion**")[1]. The Cash Collateral Motion seeks the entry of interim and final orders authorizing the Debtor's use of "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code.

At the Interim Hearing, the Court also had under consideration the Debtor's Emergency Motion for Authority to Sell Postpetition Accounts, Obtain Postpetition Financing, and Grant Senior Liens, Superpriority Administrative Expense Status and

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Cash Collateral Motion.

Adequate Protection Pursuant to 11 U.S.C. §§ 363, 364(c) and (d) and F.R.B.P. 4001 [Doc. No. 23]. Following the introduction of evidence and the argument and proffers of counsel regarding that motion, the Debtor and Comerica Bank made an *ore tenus* joint motion (the "**DIP Financing Motion**") to the Court for Comerica Bank to provide up to $2,000,000 of postpetition financing to the Debtor on the same terms provided to the Debtor by Comerica Bank on a prepetition basis subject to the provisions of this Interim Order (the "**DIP Facility**"). The DIP Facility would be retroactive to the Petition Date (January 12, 2011) and the first advance by Comerica Bank thereunder would be for the period from and including the Petition Date through and including January 20, 2011 (the "**Gap Period**") and advances thereafter would be on a daily basis, with all such advances to be made in accordance with the borrowing base requirements set forth in the Debtor's prepetition loan documents with Comerica Bank. Furthermore, Comerica Bank agreed on the record that it would provide funding under the DIP Facility for the Gap Period immediately upon entry of this Interim Order by the Court. Finally, Comerica Bank agreed on the record that there would be no requirement for the Debtor to provide a release to Comerica Bank in connection with the DIP Facility. The parties announced on the record that, as part of the DIP Facility, the Debtor would file an application with the Court to employ a chief restructuring officer in accordance with the provisions set forth below in this Interim Order, and the parties agreed that Eric Danner of CRG would be a mutually acceptable candidate.

The Court, having reviewed the Cash Collateral Motion and having considered the DIP Financing Motion, and having heard the testimony and argument and proffers of

counsel at the Interim Hearing, finds that the Cash Collateral Motion and the DIP Financing Motion should be granted on an interim basis to prevent immediate and irreparable harm to the Debtor's business and estate. Accordingly, for the reasons stated orally and recorded in open Court, which shall constitute the decision of the Court, it is

**ORDERED** that:

1. Each of the Cash Collateral Motion and the DIP Financing Motion is granted on an interim basis to the extent set forth below, pending a final hearing to be conducted by the Court on **February 9, 2011, at 10:00 a.m.** (the "**Final Hearing**"). This Interim Order shall constitute adequate and sufficient notice of the Final Hearing.

2. By no later than seven (7) days following the date of this Interim Order, the Debtor shall file an emergency motion with the Court seeking final approval of the terms of the DIP Facility. The Debtor shall include the material terms of the DIP Facility in such motion, including the terms set forth in the term sheet attached hereto as Exhibit A. Such motion shall indicate on the face thereof that it is scheduled for the Final Hearing.

3. Any objections to the Cash Collateral Motion or the DIP Facility or this Interim Order shall be in writing and shall be filed with the Clerk of the Bankruptcy Court **by no later than February 4, 2011**, and any objections by creditors or other parties in interest to the Cash Collateral Motion or the DIP Facility or any of the provisions of this Interim Order shall be deemed waived unless filed by such date. This Interim Order shall constitute adequate and sufficient notice of the foregoing objection deadline.

4. The Debtor is authorized to use Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) including, without limitation, cash, deposit accounts, payments from customers, and accounts receivable, through and including the date of the Final Hearing, or as extended by further Court order or agreement of the parties, in accordance with a budget to be agreed to by the Debtor and Comerica Bank (the "**Budget**"), so long as the aggregate of all expenses of the Debtor for each week does not exceed the amount in the Budget by ten percent (10%) for any week on a cumulative basis (the "**Variance**"). Notwithstanding the foregoing, subject to the last sentence of this paragraph, the Debtor is authorized to use Cash Collateral even if it exceeds the Variance. It shall be an event of default if the Debtor exceeds the Variance (a "**Variance Default**") without the prior written consent of Comerica Bank, which consent shall not be unreasonably withheld; provided, however, in the event of a Variance Default, the Debtor's authority to use Cash Collateral shall continue until Comerica Bank obtains an order by appropriate motion after notice and hearing (which may be on an expedited basis, subject to the Court's calendar) requiring the Debtor to cease using Cash Collateral.

5. The Debtor shall continue to provide to Comerica Bank the type and format of all financial and business reporting, by its due date, that it was required to provide to Comerica Bank prior to the filing of this Chapter 11 case.

6. Comerica Bank is hereby ordered to make available all Cash Collateral to the Debtor and to allow the Debtor to use Cash Collateral without setoff, less ordinary bank account charges and fees per the various account agreements.

7. In connection with the use of Cash Collateral, Comerica Bank is hereby granted (retroactive to January 12, 2011) and re-granted, without the necessity of executing or recording any documents, as security, a replacement lien of equal extent, validity, priority, and dignity to Comerica Bank's prepetition lien that attaches automatically and without interruption to all postpetition collateral of the same description as that subject to Comerica Bank's prepetition lien. The security interests and liens herein granted and re-granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of Comerica Bank on the Petition Date; (ii) shall secure the payment of indebtedness to Comerica Bank in an amount equal to the aggregate Cash Collateral used or consumed by the Debtor since the Petition Date; and (iii) shall be deemed to be perfected without the necessity of any further action by Comerica Bank or the Debtor.

8. As additional adequate protection for the use of Cash Collateral, the Debtor shall pay to Comerica Bank on or before the first day of each month commencing February 1, 2011, monthly payments of interest accrued on the then outstanding prepetition loan balance of Comerica Bank.

9. To avoid immediate and irreparable harm to the Debtor's estate until the Final Hearing is held, the Debtor is expressly authorized and empowered to borrow from Comerica Bank funds under the DIP Facility on the same terms provided to the Debtor by Comerica Bank on a prepetition basis subject to the provisions of this Interim Order. The DIP Facility shall be retroactive to the Petition Date (January 12, 2011) and the first advance shall be for the Gap Period and advances thereafter shall be on a daily basis,

with all such advances to be made in accordance with the borrowing base requirements set forth in the Debtor's prepetition loan documents with Comerica Bank. Comerica Bank shall provide funding under the DIP Facility for the Gap Period immediately upon entry of this Interim Order by the Court and the delivery of an executed promissory note and corporate borrowing resolutions. The prepetition guarantors for the prepetition loan with Comerica Bank (the "**Guarantors**") will consent to the entry of this Interim Order and will also execute new guaranties as to the obligations of the Debtor under the DIP Facility. The Debtor will deliver those new guarantees to Comerica Bank within one business day of the entry of this Interim Order. In the event that, following the Gap Period, there is availability under the borrowing base requirements and Comerica Bank, in its discretion, refuses to make advances under the DIP Facility, the Debtor may file an emergency motion with the Court and the Court will hear such motion on an expedited basis, subject to the Court's calendar.

10. Subject to the terms of this Interim Order, the Debtor is authorized and directed to take and effect all actions, and to execute and deliver all agreements, instruments and documents, required or necessary for its performance under the DIP Facility.

11. As security for the payment and performance of all obligations under, in connection with or relating to the DIP Facility (collectively, the "**DIP Loan Obligations**"), Comerica Bank shall be, and hereby is, granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, mortgages, security agreements, or otherwise, in accordance with Sections 364(c)(1), and

364(d) of the Bankruptcy Code, a valid and perfected first priority, senior lien on and security interest in all of the property and assets of the Debtor and its estate of every kind or type whatsoever, tangible, intangible, real, personal and mixed, whether now owned or existing or hereafter acquired or arising and regardless of where located, and including, without limitation, all property of the estate of Debtor within the meaning of Section 541 of the Bankruptcy Code, and all proceeds, rents and products of all of the foregoing and all distributions thereon (collectively, the "**Postpetition Collateral**"), subject only to (i) the prepetition liens of Comerica Bank, to the extent that they are valid, perfected, first in priority and unavailable and not subject to setoff, (ii) the adequate protection replacement lien in favor of Comerica Bank discussed above, and (iii) the Carve-Out (as hereinafter defined); provided however, that the Postpetition Collateral shall specifically not include any and all claims, causes of action or rights arising under Chapter 5 of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and all proceeds or recoveries therefrom.

12. Except as explicitly provided in paragraph 11 above, the security interests and liens granted to Comerica Bank with respect to the DIP Facility shall not be made on a parity with, or subordinated to, any other security interest or lien under Section 364(d) of the Bankruptcy Code or otherwise. Specifically, pursuant to Section 364(d) of the Bankruptcy Code, the security interests and liens granted to Comerica Bank with respect to the DIP Facility shall prime and be senior in priority to (i) the prepetition liens of Comerica Bank, if and only if and to the extent that they are valid, perfected, first liens in priority and unavailable and not subject to setoff, (ii) the liens of all other parties having

or asserting a lien or security or other interest in the Postpetition Collateral, and (iii) any replacement liens granted to parties other than Comerica Bank in any orders of the Court granting the Cash Collateral Motion.

13. The DIP Loan Obligations shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, claims against the Debtor in its Chapter 11 case which are administrative expense claims having the highest administrative priority over any and all administrative expenses, whenever arising, of the kind specified in any provision of the Bankruptcy Code, including but not limited to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, subject only to the unpaid fees of the United States Trustee payable pursuant to 28 U.S.C. § 1930(a) (the "**Carve-Out**"). Except for the Carve-Out, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case or in any subsequent case under Chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to Section 1112 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the claims of Comerica Bank with respect to the DIP Loan Obligations. No other claim having a priority superior to or pari passu with that granted by this Interim Order to Comerica Bank shall be granted in respect of the Debtor while any portion of the DIP Loan Obligations remains outstanding.

14. Comerica Bank shall not be required to file financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted with respect to the DIP Facility under this Interim Order. Notwithstanding the foregoing, Comerica Bank may,

in its sole discretion, file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, security interests and mortgages without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

15. The Debtor shall employ a chief restructuring officer (the "**CRO**") promptly following the entry of this Interim Order. By no later than seven (7) days following the date of this Interim Order, the Debtor shall file an emergency application with the Court seeking approval of the employment of the CRO (effective as of the date of its engagement). The CRO and the scope of its engagement shall be reasonably acceptable to Comerica Bank and the Debtor. The Debtor shall be responsible for the payment of up to $20,000.00 of the fees and expenses of the CRO for the month of January 2011 and up to $40,000.00 of the fees and expenses of the CRO for each calendar month thereafter commencing with February 2011. To the extent the fees and expenses of the CRO incurred in connection with the scope of engagement approved by Comerica Bank exceed the foregoing amounts for any calendar month, such excess amount shall be paid by Comerica Bank. The scope of engagement of the CRO shall provide that the CRO shall not perform any historical work or financial reports or analysis for the period prior to the Petition Date to the extent it relates to any potential claim or cause of action the Debtor may have against Comerica Bank; provided, however, if a dispute arises between the Debtor and Comerica Bank as to that issue,

either party may file an emergency motion with the Court and the Court will hear such motion on an expedited basis, subject to the Court's calendar.

16. The Debtor shall maintain its debtor in possession bank accounts with Comerica Bank. Following the entry of this Interim Order, the Debtor shall close its debtor in possession bank account with Bank of Tampa and provide Comerica Bank with an accounting of all postpetition activity in that account.

17. To the extent there is any dispute with respect to the DIP Facility or the use of Cash Collateral following the date of this Interim Order and prior to the Final Hearing, either the Debtor or Comerica Bank may file an emergency motion with the Court and the Court will hear such motion on an expedited basis, subject to the Court's calendar.

18. The provisions of this Interim Order shall be binding upon and inure to the benefit of Comerica Bank, the Debtor, and their respective successors and assigns. This Interim Order shall bind any trustee hereafter appointed or elected for the estate of the Debtor, whether in this Chapter 11 case or in the event of the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

19. If any or all of the provisions of this Interim Order are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other court, such modification, vacatur, amendment or stay shall not affect the validity of any obligation under the DIP Facility to Comerica Bank that is or was incurred prior to the effective date of such modification, vacatur, amendment or stay, or the validity and enforceability of any security interest, lien or priority authorized or created by this Interim Order and,

notwithstanding any such modification, vacatur, amendment or stay, any obligations of the Debtor pursuant to this Interim Order arising prior to the effective date of such modification, vacatur, amendment or stay shall be governed in all respects by the original provisions of this Interim Order, and the validity of any such credit extended or security interest or lien granted pursuant to this Interim Order is subject to the protection accorded under Section 364(e) of the Bankruptcy Code.

20. This Interim Order constitutes findings of fact and conclusions of law and takes effect and becomes enforceable immediately upon execution hereof.

21. The provisions of this Interim Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

22. This Interim Order is without prejudice to the Debtor's rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

23. Notwithstanding anything to the contrary contained in this Interim Order or any other order entered in this case or in any documents executed by any party in connection with the DIP Facility, (i) the Court makes no determination at this time as to the extent, validity, or priority of any lien or security interest held by, or the obligations owed to or claim of, Comerica Bank or any other party prior to the Petition Date, and the Debtor, Comerica Bank, any committee of unsecured creditors that may be appointed in this case (the "**Committee**") and other parties in interest in this case reserve all rights, defenses and claims with respect to the foregoing, and (ii) neither the Debtor nor any other party in interest, including the Committee, shall be deemed to have waived any

right to challenge the extent, validity or priority of the prepetition liens or claims of Comerica Bank or any other party.

24. Comerica Bank's offer, and the Debtor's acceptance, of the DIP Facility and the documents executed in connection with the DIP Facility shall not affect or waive or be deemed to waive and claims or causes of action that the Debtor, the Guarantors or Comerica Bank may have against each other, and the Debtor, the Guarantors and Comerica Bank shall retain and reserve all such claims and causes of action.

25. To the extent there is any inconsistency between the language in this Interim Order and the language in any documents executed in connection with the DIP Facility, the language in this Interim Order shall control.

26. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral.

DONE AND ORDERED Tampa, Florida on January 21, 2011.

MGWilliamson

Michael G. Williamson
U.S. Bankruptcy Judge

Copies provided by CM/ECF

# EXHIBIT A

ComericA Bank

Comerica Bank

P.O. Box 75000
Detroit, Michigan 48275

January 18, 2011

Cargo Transportation Services, Inc.
Cargo-West, Inc.
CTS Tennessee, LLC
1300 Sawgrass Corporate Parkway
Suite 110
Sunrise, Florida 33323
Attn: David Bell

Re: **FINANCING ARRANGEMENTS AMONG COMERICA BANK ("BANK"), CARGO TRANSPORTATION SERVICES, INC. ("CTS"), CARGO-WEST, INC. ("WEST") AND CTS TENNESSEE, LLC ("TENNESSEE" AND TOGETHER WITH CTS AND WEST, "BORROWERS"), AND ANNA MARIE MANNING, JOHN MANNING, STACEY BELL, AND DAVID BELL (TOGETHER, "GUARANTORS")**

Dear Mr. Bell:

Please refer to any and all documents, instruments, and agreements executed in connection with the financing arrangements from Bank to Borrowers and Guarantors (collectively, the "Loan Documents"). All capitalized terms not defined in this letter have the meanings set forth in the Loan Documents.

As discussed between Bank's and Borrower's counsel, Bank is interested in providing Borrowers a Debtor in Possession loan facility ("DIP Loan") in Borrower's bankruptcy case number 8:11-bk-432-MGW filed January 12, 2011 in the United States Bankruptcy Court, Middle District of Florida, Tampa Division.

If we can agree to terms of a DIP Loan and use of cash collateral, such terms will be incorporated into an order authorizing the use of cash collateral and postpetition financing and granting adequate protection ("Financing Order"). The DIP Loan and Financing Order will include, but not be limited to, the terms discussed between Bank's and Borrowers' counsel along with the following terms:

| | |
|---|---|
| Term: | Earlier of the date of default under the Financing Order or 120 days after the petition date. |
| Facility Amount: | Two Million Dollars ($2,000,000). |
| Interest Rate: | Bank's Prime Reference Rate plus an Applicable Margin of one half percent (0.5%) and payable to Bank on the first business day of each month. |
| Priority: | The DIP Loan shall have priority under § 364(c)(1) of the Bankruptcy Code. |

| | |
|---|---|
| Adequate Protection: | For use of cash collateral, Bank to receive payment of accrued interest in arrears with respect to the prepetition indebtedness, monthly payment of accrued interest on the prepetition indebtedness, and a continuing and replacement lien on all assets of Borrowers. See Order. |
| Security: | Bank is granted a security interest in all assets of Borrowers (except avoidance actions) junior only to the lien in favor of Bank securing the prepetition indebtedness of Borrowers to Bank ("Prepetition Indebtedness"). |
| Advance Formula: | Use of cash collateral and advances under the DIP Loan are subject to (a) the Advance Formula Agreement dated July 25, 2008 between Borrowers and Bank ("Advance Formula Agreement"), which shall exclude all Sun Valley (produce) related accounts receivable as Eligible Accounts (as defined in the Advance Formula Agreement) and (b) a budget acceptable to Bank. The sum of the principal outstanding under the DIP Loan and the Prepetition Indebtedness must be within the formula. |
| CRO: | Prior to or concurrently with execution of the DIP Loan, Borrowers shall employ a Chief Restructuring Officer acceptable to Bank with a scope of employment acceptable to Bank. See Order |
| Fees and Expenses: | Fees and expenses with respect to documentation of the DIP Loan shall be limited to a maximum of $25,000. There shall be no prepayment premium or origination fee associated with the DIP Loan. |
| Reporting: | Reporting shall include:<br>(a) all reporting currently required under the Loan Documents, including all reporting required under the Agreement between Bank, Borrowers, and Guarantors dated September 7, 2010 as amended under the First Amendment dated November 15, 2010 (as amended, "Agreement"); and<br>(b) on Monday of each week, an updated calculation of ineligible accounts receivable as of the previous Friday. |
| Financial Consultant: | Bank's counsel may continue to engage a financial consultant with a scope of engagement in Bank's counsel's sole discretion. Borrowers and Guarantors agree to fully cooperate with such financial consultant. Reserved. |
| Release: | Borrowers and Guarantors shall release Bank for any and all known or unknown claims of any kind they may have against Bank. |

| | |
|---|---|
| Consent: | Guarantors to acknowledge, agree, and consent to the DIP Loan and Financing Order. |
| DIP Account: | Borrowers shall maintain their Debtor in Possession accounts at Bank. |
| Fees and Expenses: | ~~Borrowers to reimburse Bank for all fees and expenses, including attorney fees.~~ Reserved. |
| Compensation: | Employee compensation shall not exceed the maximum allowed in the Agreement. Borrowers shall provide Bank with the salary of any other compensation agreed to be paid to Guarantors and any other officers or managers of Borrowers. |

THIS LETTER SHALL NOT CONSTITUTE AN OFFER OR COMMITMENT TO LEND. IT IS INTENDED FOR DISCUSSION PURPOSES ONLY, AND IS SUBJECT TO REQUISITE APPROVAL BY BANK, EXECUTION OF LOAN DOCUMENTATION ACCEPTABLE TO BANK, AND ENTRY BY THE COURT OF THE FINANCING ORDER.

Please contact me at your earliest convenience if you are interested in discussing further.

Very truly yours,

Shareef Simaika
Comerica Bank
Vice President
Special Assets Group
P.O. Box 75000
Detroit, Michigan 48275-3205
(313) 222-6959