UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Chapter 11

CARGO TRANSPORTATION
SERVICES, INC.,  Case No. 8:11-bk-00432-MGW

    Debtor.
_____/

DEBTOR'S MOTION FOR AUTHORITY TO OBTAIN POSTPETITION
FINANCING FROM COMERICA BANK AND GRANT SENIOR LIENS,
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 364(c) AND 364(d) AND F.R.B.P. 4001

> A hearing on this Motion will be held on February 9, 2011, at 10:00 a.m., in Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida, before the Honorable Michael G. Williamson, Bankruptcy Judge.

### STATEMENT OF RELIEF REQUESTED

> The Debtor seeks authority to borrow money, pursuant to a revolving credit facility with Comerica Bank, in order to fund operating expenses and costs of administration in this Chapter 11 case in accordance with the proposed budget attached hereto. The liens proposed to be granted would be senior liens on all property of the Debtor, except as otherwise provided in this Motion. This Motion seeks to have the liens granted pursuant to any financing approved by this Court to be deemed perfected without the need for any further filings. The principal terms of the revolving credit facility are set forth in Paragraph 21 herein. On January 21, 2011, this Court entered its Interim Order (1) Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure and (2) Granting *Ore Tenus* Joint Motion of the Debtor and Comerica Bank for Postpetition Financing [Doc. No. 42], which order approved the terms of the revolving credit facility as set forth herein on an interim basis.

### Introduction

Cargo Transportation Services, Inc., as debtor and debtor in possession (the "**Debtor**"), by and through its undersigned counsel, hereby files its Motion for Authority to Obtain

Postpetition Financing from Comerica Bank and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and 364(d) and F.R.B.P. 4001 (the "**Motion**"), and respectfully requests that this Court enter a final order (the "**Final Approval Order**"), inter alia:

(A) Authorizing the Debtor to borrow on a secured basis from Comerica Bank (the "**DIP Lender**") the principal amount of up to $2,000,000.00 (the "**DIP Facility**"), in accordance with the terms of this Motion, the DIP Loan Documents (as defined below), and the Second Interim Order (as defined below);

(B) Authorizing the Debtor to execute, and ratifying the Debtor's execution of, a Master Revolving Note dated January 21, 2011 in favor of the DIP Lender (the "**DIP Loan Note**") and such other documents, instruments and agreements required by the DIP Facility which shall be consistent with the terms of this Motion (collectively, the "**DIP Loan Documents**"), and authorizing the Debtor to perform all such other acts as may be required in connection with the DIP Loan Documents;

(C) Authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by liens on and security interests in all property of the Debtor pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition and postpetition liens or other interests encumbering property of the Debtor, except as otherwise provided in paragraph 21(f) of this Motion;

(D) Authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority

2

over any and all administrative expenses of and priority claims against the Debtor, subject only to the Carve-Out, as further described in this Motion;

(E) Modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of this Motion; and

(F) Granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of this Motion.

## Jurisdiction

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein include Sections 105, 361, 362, 363, 364 and 545 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

2. On January 12, 2011 (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

3. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

5. No trustee or examiner has been appointed in this case.

6. On January 26, 2011, the Office of the United States Trustee appointed an Unsecured Creditors Committee (the "**Committee**") in this case pursuant to Section 1102 of the Bankruptcy Code [Doc. No. 55].

7. The Debtor is a Florida corporation that provides comprehensive transportation services to clients nationwide, including customized consolidation, distribution, logistics and warehousing services. The Debtor, along with its non-debtor affiliates, CTS Tennessee, LLC, Cargo-West, Inc., and Texas-CTS, LLC, employ approximately 140 employees and average approximately $100,000,000.00 in gross revenue per year.

## Prepetition Secured Indebtedness and Liens

8. On May 17, 2010, the Debtor, CTS Tennessee, LLC, and Cargo-West, Inc. (collectively, the "**Borrowers**") executed a Master Revolving Note (the "**Prepetition Revolving Note**"), in the original principal of $10,150,000.00, in favor of Comerica Bank (the "**Prepetition Lender**"). The Prepetition Revolving Note amended and restated a Promissory Note dated as of September 29, 2009, in the original principal of $10,000,000.00, executed by the Borrowers in favor of the Prepetition Lender. Advances under the Prepetition Revolving Note are subject to the terms of an Advance Formula Agreement dated as of July 25, 2008 (the "**Prepetition Formula Agreement**"), between the Prepetition Lender and the Borrowers, which provides that the Borrowers' indebtedness to the Prepetition Lender under the Prepetition Revolving Note shall not exceed eighty-five percent (85%) of the Borrowers' Eligible Accounts (as defined therein). As of the Petition Date, the outstanding balance under the Prepetition Revolving Note was approximately $6.4 million (the "**Prepetition Indebtedness**"). The Debtor's total outstanding accounts receivable as of the Petition Date were in excess of $9.5 million.

9. The obligations of the Borrowers under the Prepetition Revolving Note are secured by liens and security interests (the "**Prepetition Liens**") on all personal property of the Borrowers, including the Borrowers' accounts receivable, pursuant to Security Agreements executed by each of the Borrowers in favor of the Prepetition Lender prior to the Petition Date (collectively, the "**Prepetition Security Agreements**").

10. The obligations of the Borrowers under the Prepetition Revolving Note are also guaranteed pursuant to the terms of Guaranties (collectively, the "**Prepetition Guaranties**") executed by John Manning, David Bell, Anna Marie Manning and Stacey Bell (collectively, the "**Guarantors**").

11. Copies of the Prepetition Revolving Note, the Prepetition Formula Agreement, the Prepetition Security Agreements, and the Prepetition Guaranties are attached hereto as Composite Exhibit A and incorporated herein by this reference thereto. The Prepetition Revolving Note, the Prepetition Formula Agreement, the Prepetition Security Agreements, the Prepetition Guaranties and all other documents executed in connection therewith shall hereinafter be referred to collectively as the "**Prepetition Loan Documents**."

### Interim Use of Cash Collateral/Interim Debtor in Possession Financing

12. On January 10, 2011, relying on technical non-monetary defaults that are disputed by the Debtor, the Prepetition Lender unilaterally seized the Debtor's monies in its bank accounts and began collecting 100% of the Debtor's accounts receivable. The amount collected by the Prepetition Lender to date is approximately $1.7 million.

13. Pursuant to 11 U.S.C. §363(c)(2), on the Petition Date, the Debtor was prohibited from using receipts generated from the Debtor's operations, which constituted cash collateral as

defined in 11 U.S.C. § 363(a) (the "**Cash Collateral**") without the consent of the Prepetition Lender or an order of this Court.

14. In order to obtain permission to use Cash Collateral, on January 12, 2011, the Debtor filed its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure [Doc. No. 2] (the "**Cash Collateral Motion**") and requested emergency consideration of the Cash Collateral Motion.

15. On January 20, 2011, this Court entered its Interim Order Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure [Doc. No. 36] (the "**First Interim Order**"). Pursuant to the First Interim Order, the Debtor was authorized to use Cash Collateral, on an interim basis, from the Petition Date through and including January 19, 2011, in accordance with the terms and conditions contained therein, including an operating budget attached to the First Interim Order. In addition, in the First Interim Order, as adequate protection for the Debtor's use of Cash Collateral, the Prepetition Lender was granted (retroactive to the Petition Date) a replacement lien (the "**Replacement Lien**") on postpetition collateral of the same description as that subject to the Prepetition Lender's Prepetition Liens, with equal extent, validity, priority, and dignity to the Prepetition Lender's Prepetition Liens. The Court made no determination as to the extent, validity, priority, or dignity of any security interest held by the Prepetition Lender, or the obligations between the Prepetition Lender and the Debtor, prior to the Petition Date.

16. On January 17, 2011, the Debtor filed its Emergency Motion for Authority to Sell Postpetition Accounts, Obtain Postpetition Financing, and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 363, 364(c) and (d) and F.R.B.P. 4001 [Doc. No. 23] (the "**DIP Factoring Motion**"). Pursuant to the DIP Factoring Motion, the Debtor sought authority to obtain postpetition financing in the principal amount of up to $2,000,000.00 through the sale of its postpetition accounts receivable to Advance Business Capital LLC. A hearing on the DIP Factoring Motion was held on January 19, 2011 and, following the introduction of evidence and the argument and proffers of counsel regarding the DIP Factoring Motion at that hearing, the Debtor and Comerica Bank made an *ore tenus* joint motion to the Court for Comerica Bank to provide up to $2,000,000.00 of postpetition financing to the Debtor on substantially the same terms provided to the Debtor by the Prepetition Lender in the Prepetition Loan Documents (subject to certain additional terms as described below), which motion was granted by the Court at that hearing.

17. On January 21, 2011, this Court entered its Interim Order (1) Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure and (2) Granting *Ore Tenus* Joint Motion of the Debtor and Comerica Bank for Postpetition Financing [Doc. No. 42] (the "**Second Interim Order**"). Pursuant to the Second Interim Order, the Debtor was authorized to use Cash Collateral, on an interim basis, through and including February 9, 2011, in accordance with the terms and conditions contained therein, including an operating budget to be agreed to by the Debtor and the Prepetition Lender. In addition, in the Second Interim Order, as adequate protection for the Debtor's use of Cash Collateral, (i) the Prepetition Lender was re-

granted the Replacement Lien, and (ii) the Debtor was required to pay to the Prepetition Lender on or before the first day of each month commencing February 1, 2011, monthly payments of interest accrued on the then outstanding Prepetition Indebtedness to the Prepetition Lender.

18. In addition to the foregoing, pursuant to the Second Interim Order, the Court approved the DIP Facility, on an interim basis, pending a final hearing to be held on February 9, 2011 (the "**Final Hearing**"), in accordance with the terms and conditions contained therein. Following the entry of the Second Interim Order, the DIP Lender commenced funding under the DIP Facility (retroactive to the Petition Date). The Second Interim Order required the Debtor to file this Motion with the Court by no later than January 28, 2011, and set a deadline of February 4, 2011 for creditors of the Debtor or other parties in interest in this case to file objections to the DIP Facility or any of the provisions of the Second Interim Order.

19. Following the entry of the Second Interim Order, the Debtor executed and delivered the DIP Loan Note in favor of the DIP Lender. In addition, the Guarantors executed new Guaranties (collectively, the "**Postpetition Guaranties**") in favor of the DIP Lender, guaranteeing the indebtedness under the DIP Loan Note. Copies of the DIP Loan Note and the Postpetition Guaranties are attached hereto as Composite Exhibit B and incorporated herein by this reference thereto.

### Terms of the DIP Facility

20. The DIP Lender is Comerica Bank. Neither the DIP Lender nor any of its officers, directors, managers or members is an affiliate of, or otherwise connected with, the Debtor.

21. The principal terms of the DIP Facility, as set forth in the DIP Loan Note and in the Second Interim Order, are as follows:

(a) Amount of DIP Facility. The DIP Facility will be in the maximum principal amount of $2,000,000.00.

(b) Advance Formula. The DIP Facility will be a revolving credit facility. The use of Cash Collateral and advances under the DIP Facility will be subject to the Prepetition Formula Agreement, including the definition of Eligible Accounts thereunder. In this regard, the accounts receivable of Sun Valley International, LLC shall not be Eligible Accounts. The sum of the principal amount outstanding under the DIP Loan Note and the Prepetition Indebtedness must be within the formula set forth in the Prepetition Formula Agreement.

(c) Budget. Advances under the DIP Facility are subject to a budget acceptable to the DIP Lender. The Debtor has prepared a budget (the "**Budget**"), a copy of which is attached hereto as Exhibit C, which sets forth the Debtor's cash needs for the four (4) week period from the week beginning February 5, 2011 through the week beginning February 26, 2011.

(d) Interest Rate. The DIP Facility will bear interest at the Prime Referenced Rate plus an Applicable Margin of one-half percent (0.5%), as each of those terms are defined in the DIP Loan Note. Interest shall be paid by the Debtor to the DIP Lender on the first business day of each month.

(e) Maturity Date. The maturity date of the DIP Facility shall be the earlier of (i) May 12, 2011 or (ii) the occurrence of an event of default under the Final Approval Order.

(f) Security and Priority. The DIP Facility will be secured by all assets of the Debtor (the "**Collateral**") and the lien granted to the DIP Lender will be a first priority lien, senior to all prepetition and postpetition liens of all parties in the Collateral; provided, however, that the lien granted to the DIP Lender shall be junior to (i) the Prepetition Liens of the Prepetition Lender, to the extent that they are valid, perfected, first in priority and unavoidable and not subject to set-off, (ii) the Replacement Lien in favor of the Prepetition Lender discussed above, and (iii) the Carve-Out. The Collateral shall specifically not include any and all claims, causes of action or rights arising under Chapter 5 of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and all proceeds or recoveries therefrom.

(g) Superpriority Administrative Expense Claim. The DIP Lender shall also receive a superpriority administrative expense in the Debtor's Chapter 11 case pursuant to 11 U.S.C. §§ 364(c)(1), 503(b) and 507(b), with priority over all other administrative expense claims in the Debtor's Chapter 11 case except for the unpaid quarterly fees payable to the Office of the

United States Trustee pursuant to 11 U.S.C. §1930(a)(6) (the "**Carve-Out**"). Except for the Carve-Out, no administrative expense, and no claim allowed and payable under 11 U.S.C. §§ 330, 331, 503(b) 506(c), 507 or 726, shall have priority over, or be *pari pasu* with, the DIP Lender with respect to any asset of the Debtor which constitutes either the Collateral pursuant to 11 U.S.C. § 364(d) or with respect to the claims of the DIP Lender pursuant to 11 U.S.C. § 364(c)(1).

(h) Chief Restructuring Officer. As a condition precedent to the DIP Lender's obligation to provide the DIP Facility, the Debtor agreed to employ a chief restructuring officer in accordance with the terms set forth in paragraph 15 of the Second Interim Order. Concurrently with the filing of this Motion, the Debtor is filing an application to employ CRG Partners Group LLC ("**CRG**") as its chief restructuring officer. The Final Approval Order shall incorporate the mutually agreed terms (as between the Debtor, Comerica Bank and CRG) for the payment of any compensation to CRG.

(i) Prepayment. The DIP Loan Note may be prepaid, in whole or in part, at any time without premium or penalty.

(j) Fees and Expenses. The Debtor shall pay the DIP Lender's fees and expenses with respect to documentation of the DIP Facility, but such obligation shall be limited to a maximum amount of $25,000.00. There shall be no origination fee associated with the DIP Facility.

(k) Reporting. The Debtor shall provide to the DIP Lender all reports currently required under the Prepetition Loan Documents and, on Monday of each week, the Debtor shall provide to the DIP Lender an updated calculation of ineligible accounts receivable as of the previous Friday.

(l) Debtor in Possession Bank Accounts. The Debtor shall maintain its debtor in possession bank accounts with Comerica Bank. The Debtor is also required to close its debtor in possession bank account with Bank of Tampa and provide Comerica Bank with an accounting of all postpetition activity in that account.

(m) Guaranties. The Guarantors are required to consent to the DIP Facility and execute new guaranties as to the obligations of the Borrowers under the DIP Loan Note. As stated in paragraph 19 above, the Guarantors have executed the Postpetition Guaranties.

(n) Compensation. Compensation to certain designated employees of the Borrowers shall not exceed the maximum allowed in the Prepetition Loan Documents. The Debtor shall provide the DIP Lender with the salary or any other compensation agreed to be paid to the Guarantors and any other officers or managers of the Borrowers.

22. The description of the DIP Facility contained in this Motion is intended as a summary only and is qualified in its entirety by reference to the DIP Loan Documents, and to the extent there is any inconsistency between the language of the DIP Loan Documents and the description thereof set forth in this Motion, the DIP Loan Documents shall control any such inconsistency. Each creditor of the Debtor and party in interest should read, consider and carefully analyze the terms and provisions of the DIP Loan Documents.

### Relief Requested and Grounds for Relief

23. The Debtor hereby requests authority, pursuant to Sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, to obtain postpetition advances and other financial accommodations from the DIP Lender in an amount of up to $2,000,000.00, secured by a security interest in and lien on all assets and property interests of the Debtor which will be senior to any existing prepetition and postpetition liens and interests in such assets and property interests, except as otherwise provided in paragraph 21(f) of this Motion. The DIP Lender shall not be granted a lien on any claim or cause of action arising under Section 544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code.

24. Notwithstanding anything to the contrary contained in this Motion or in the Second Interim Order or any other order entered in this case or in any documents executed by any party in connection with the DIP Facility, (i) no determination will be made as to the extent, validity, or priority of any lien or security interest held by, or the obligations owed to or claim of, the Prepetition Lender or any other party prior to the Petition Date, and the Debtor, Comerica Bank, the Committee and other parties in interest in this case reserve all rights, defenses and claims with respect to the foregoing, and (ii) neither the Debtor nor any other party in interest, including the Committee, shall be deemed to have waived any right to challenge the extent,

validity or priority of the prepetition liens or claims of the Prepetition Lender or any other party. Comerica Bank's offer, and the Debtor's acceptance, of the DIP Facility and the documents executed in connection with the DIP Facility shall not affect or waive or be deemed to waive and claims or causes of action that the Debtor, the Guarantors or Comerica Bank may have against each other, and the Debtor, the Guarantors and Comerica Bank shall retain and reserve all such claims and causes of action.

25. The Debtor further requests authority to enter into the DIP Loan Documents with the DIP Lender.

26. As additional assurance that the DIP Facility will be repaid, the DIP Lender will be granted and allowed a superpriority administrative expense claim in accordance with Section 364(c)(1) of the Bankruptcy Code having priority and right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, except for the Carve-Out.

27. The Debtor believes that the financing described herein is in its best interest and the best interest of its creditors. The Debtor's access to the financing described herein will maximize its ability to continue its business without interruption.

28. The Debtor is presently unable to obtain, in the ordinary course of business or otherwise:

> (a) pursuant to Section 364(a) or 364(b) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) allowable

under Section 503(b)(1) of the Bankruptcy Code as an administrative expense;

(b) pursuant to Section 364(c)(1) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code;

(c) pursuant to Section 364(c)(2) of the Bankruptcy Code, credit secured by a lien on property of the estate that is not otherwise subject to a lien;

(d) pursuant to Section 364(c)(3) of the Bankruptcy Code, credit secured by a junior lien on property of the estate that is subject to a lien; or

(e) credit on any basis other than that described in this Motion.

29. After considering all of the alternatives, the Debtor has concluded, in the exercise of its business judgment, that the DIP Facility to be provided under the terms of the DIP Loan Documents, the Second Interim Order and this Motion represents the best financing available to the Debtor and is in the best interests of the Debtor, its creditors and other parties in interest.

30. As set forth in the Motion and based upon the record of this proceeding, the DIP Lender and the Debtor have negotiated the terms and conditions of the DIP Facility in good faith and at arm's-length, and the terms and conditions of the DIP Facility are fair and reasonable and are supported by reasonably equivalent value. The Debtor requests that this Court find that any credit extended by the DIP Lender pursuant to the terms of the DIP Facility and the DIP Loan Documents will have been extended in "good faith" (as that term is used in Section 364(e) of the Bankruptcy Code).

## Notice

31. A copy of this Motion is being sent to counsel to Comerica Bank, the Committee, the twenty largest unsecured creditors of the Debtor, and all parties set forth on the Local Rule 1007(d) Parties in Interest List for this case. The Debtor requests that the Court enter an order

finding that notice of this Motion, the Second Interim Order and the Final Hearing was adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

32. In order to reduce photocopying and mailing costs, copies of certain of the Exhibits attached to this Motion are not being served on all parties listed in the Certificate of Service below. Any party wishing to receive a copy of such Exhibits may do so upon written request to undersigned counsel for the Debtor.

WHEREFORE, the Debtor respectfully requests that this Court enter a final order granting this Motion, authorizing the Debtor to obtain financing and grant liens pursuant to 11 U.S.C. §§ 364(c) and (d) in accordance with the terms and conditions of this Motion and the DIP Loan Documents, and granting such other and further relief as may be just and proper.

Dated: January 28, 2011

/s/ Charles A. Postler
Charles A. Postler (Fla. Bar No. 455318)
cpostler@srbp.com
Edward J. Peterson (Fla. Bar No. 0014612)
epeterson@srbp.com
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 Madison Street, Suite 200
Tampa, Florida 33602
PH   (813) 229-0144
FAX  (813) 229-1811
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the **Debtor's Motion for Authority to Obtain Postpetition Financing from Comerica Bank and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11**

U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 together with all attached Exhibits has been furnished on this 28th day of January, 2011, by (i) **CM/ECF Transmission** to the United States Trustee, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, and (ii) **U.S. Mail** and/or **CM/ECF Transmission** (without the attached Exhibits A and D, unless received by the following parties by CM/ECF Transmission) to (a) all parties set forth on the Local Rule 1007(d) Parties in Interest List and the 20 Largest Unsecured Creditors of the Debtor as set forth on the matrices attached hereto as Composite Exhibit D, (b) Robert J. Diehl, Jr., Esq., BODMAN PLC, 6th Floor at Ford Field, 1901 St. Antoine Street, Detroit, Michigan 48226, counsel to Comerica Bank, and (c) Craig V. Rasile, Esq., Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, Florida 33131.

/s/ Charles A. Postler
Charles A. Postler