# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FILED VIA MAIL

MAY 12 2011

CLERK, U.S. BANKRUPTCY
COURT MIDDLE
DISTRICT FLORIDA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CARGO TRANSPORTATION | ) | Case No. 8:11-bk-432-MGW |
| SERVICES, INC., | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) | Re: Docket Nos. 67, 81, 85, 121 & 198 |

## ESTES EXPRESS LINES' EMERGENCY MOTION
## FOR RELIEF FROM STAY TO PERMIT COLLECTION OF
## ACCOUNTS RECEIVABLE THAT ARE NOT PROPERTY OF THE
## DEBTOR'S ESTATE AND REQUEST FOR EXPEDITED HEARING

## NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within 15 days from the date this paper is entered on the docket. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at 801 N. Florida Avenue, Tampa, Florida 33602, and serve a copy on the movant's attorneys, Lawrence J. Roberts, 249 Catalonia Avenue, Coral Gables, Florida 33134; Rafael X. Zahralddin-Aravena, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801 and Shelley A. Kinsella, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801.

If you file and serve an objection within the time permitted, the Court may schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Estes Express Lines ("Estes"), by undersigned counsel, and pursuant to section 362(d) and section 541 of title 11 of the United States Code (the "Bankruptcy Code) and Rule 2002-4 of the Local Rules for the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), hereby moves (the "Motion") for entry of an Order clarifying of lifting the automatic stay pursuant to section 362 of the Bankruptcy Code to permit collection of accounts

receivable that are not property of the estate of Cargo Transportation Service, Inc. (the "Debtor") and respectfully states as follows:

## FACTUAL BACKGROUND

1.     Cargo Transportation Service, Inc. (the "Debtor") filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on January 12, 2011 (the "Petition Date").

2.     On January 18, 2011, the Debtor filed an *Emergency Motion to Pay Prepetition Claims of Independent Contractors* (Docket No. 31) (the "IC Motion"). Estes was listed an independent contractor which the Debtor wished to pay. The Debtor noted that it was imperative that entities such as Estes get paid their prepetition claims. If such entities "do not continue to provide service to the Debtor, the Debtor will not be able to serve its customers, the customers will move their business elsewhere, and the Debtor will fail." IC Motion at ¶ 2.

3.     On January 31, 2011, the Debtor filed an *Emergency Motion for an Order: (1) To Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) To Enforce Automatic Stay* (the "Show Cause Motion") (Docket No. 67). The Show Cause Motion alleged that ten (10) independent contractors, dubbed less than truckload independent contractors or "LTL IC's," had been pursuing certain customers of the Debtor for receivables, activity by the LTL ICs which the Debtor alleged would cause them harm. Estes was specifically named in the exhibit to the Motion as an LTL IC.

4.     On March 8, 2011, Estes filed a response to the Show Cause Motion. *See Estes Express Lines' Limited Response to Debtor's Emergency Motion for an Order: (1) To Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) To Enforce Automatic Stay* (the "Response") (Docket No. 198).

Among other things, the Response states that Estes provides shipping services for Mad Catz, Inc. ("Mad Catz"), based in San Diego, California, a customer which it shares with the Debtor.

5.     Prior to the matter being heard the Debtor and Estes had agreed to resolve any issues with the parties by the Debtor clarifying on the record that Estes had not engaged in any actions in violation of the stay and that Estes would agree not to proceed against any shared customers without seeking stay relief. A draft Final Order is still being finalized by Estes, the Debtor, and other interested parties. The Final Order contemplates a carve-out for Estes stating that Estes will not contact customers of the Debtor for payment unless Estes files a motion for relief from the automatic stay. Though Estes reserved its right to contest whether the stay applies to Estes contacting customers for its independent receivable, Estes was willing to work on a consensual basis with the Debtor while the Debtor dealt with several other active issues in its reorganization.

6.     Since the Response was filed and the carve-out agreed upon, it came to Estes' attention that the Debtor and Estes also share other customers in addition to Mad Catz for which there are other receivables. Those customers are: BSN; Baring Industries; Central Poly; Channell Commercial Corp; Grooms Engines; Interco; Mad Catz; Magic 4; and Pacer Technologies (collectively, the "Non-Debtor Third Party Shippers"). The Mad Catz debt totals represents the vast majority of the outstanding receivables at issue in this Motion.

7.     There is no contract between Estes and the Debtor. *See* Response at 5. Accordingly, unlike the other LTL ICs listed in the Show Cause Motion, Estes is not subject to a non-solicitation agreement. All work done with the Debtor is done on a case-by-case basis pursuant to the Interstate pricing tariffs. *Id.* at Ex. A.

8.     Estes issues bills of lading to shippers that conform to the industry standard. Under the default terms, "[t]he bill of lading provides that the owner or consignee shall pay the freight and all other lawful charges upon the transported property and that the consignor remains liable to the carrier for all lawful charges. The bill of lading, however, also contains "nonrecourse" and "prepaid" provisions that, if marked by the parties, release the consignor and consignee from liability for the freight charges." *Spedag Americas, Inc. v. Petters Hospitality and Enters. Group, LLC*, 2008 U.S. Dist. LEXIS 62911, at * 5-*6 (S.D. Fla. Aug. 18, 2008) (quoting *C. A. R. Transportation Brokerage Co. v Darden Restaurants, Inc.*, 213 F. 3d 474, 478-79 (9th Cir. 2000). Conversely, if the nonrecourse provision, known as Section 7 of the bill of lading, is not marked, the shipper remains primarily liable to the carrier. *See ¶¶* 16-20, *infra*. None of the Non-Debtor Third Party Shippers executed the nonrecourse provision for the receivables at issue here.

9.     Despite its ability to do so, Estes has not yet pursued its receivables from Mad Catz or any other Non-Debtor Third Party Shipper. Estes has not impermissibly interfered with any alleged interest of the estate, only working in the ordinary course of business to protect its own interests. Upon information and belief, however, the Debtor has been funded payment for Estes' shipping services arranged by the Debtor to the Non-Debtor Third Party Shippers, which the Debtor has not passed along to Estes.

10.     In an effort to amicably resolve this issue with the Debtor, Estes and the Debtor engaged in lengthy good-faith arms-length negotiations, resulting in an agreement executed on May 4, 2011 for their continued business relationship that provides terms that are better than the pre-bankruptcy relationship (the "Settlement Agreement"). The Settlement Agreement provides, among other things, that Estes' prepetition claim against the Debtor is no less than $515,998.91

4

and no more than $535,998.91 (the "Claim"). Estes believes that the appropriate amount of the

Claim is $535,988.91 and has not yet received the final accounting from the Debtor.

11.     The Settlement Agreement further provides that the Debtor will make an initial

payment of $100,000.00 no later than May 10, 2011 and the remainder of the amount of the

Claim to be determined by no later than May 10, 2011, which will be paid by the Debtor in six

equal installments coming monthly and starting on June 10, 2011.

12.     Importantly, the Settlement Agreement also states that time is of the essence.

13.     On March 15, 2011, this Court entered a *Final Order Granting (1) Debtor's

Emergency Motion for Authorization to Pay Prepetition Claims of Critical Vendors and (2)

Debtor's Emergency Motion to Pay Prepetition Claims of Independent Contractors* [Docket No.

217] (the "Carrier Order"). Pursuant to the Carrier Order, the Debtor is required to email counsel

for Comerica Bank ("Comerica") and counsel for the Official Committee of Unsecured Creditors

(the "Committee") a list of critical vendors and independent contractors for approval of the

payment of such critical vendors' and independent contractors' prepetition claims. *See* Carrier

Order at ¶ 2.a. Comerica and the Committee have until 5:00 p.m. the following day to raise a

concern regarding a payment to a particular vendor or contractor. If no concern is raised, the

Debtor is authorized to proceed with the agreement. If a concern is timely raised, the Debtor

shall not proceed with the proposed agreement absent resolution or Court order. *Id.* at ¶ 2.b.

14.     Pursuant to the Carrier Order, the Debtor sought approval of the Settlement

Agreement from the Committee and the Bank on May 5, 2011. Comerica and the Committee

requested an extension until May 10, 2011 to consider the proposed agreement. Additionally,

the Committee requested additional information concerning the Settlement Agreement and Estes

provided additional information. Neither the Committee nor Comerica have raised a concern over the Settlement Agreement within the allotted time.

15.    Accordingly, the Debtor and Estes are submitting a joint motion for approval of the Settlement Agreement (the "Approval Motion"). Despite the passage of certain critical dates in the Settlement Agreement, Estes supports the Approval Motion and, will work with the Debtor to reach new mutually agreeable dates.

16.    In conjunction with the Approval Motion, Estes is filing this Motion to protect its rights to recover from the Non-Debtor Third Party Shippers the amounts it is owed.

17.    Estes is awaiting a final accounting from the Debtor to determine what amounts the Debtor has been paid for Estes' shipping services arranged by the Debtor.

18.    Estes has done everything possible to avoid filing this Motion. The company has patiently negotiated in good faith and at arms-length with the Debtor in attempting to reach an amicable resolution. In an effort to support the Debtor, Estes has refrained from exercising its rights with respect to the Non-Debtor Third Party Shippers. Time is of the essence and Estes needs a resolution.

19.    With this Motion, Estes firmly believes that it is not interfering with any alleged interest of the estate. Estes only seeks to collect the value of the shipping costs for the shipping services provided by Estes and arranged by the Debtor. Under the Interstate Commerce Act, including Eleventh Circuit case law interpreting the Act, Estes has a separate and distinct receivable due from the customer that is independent from the Debtor's obligations with respect to the receivable.

## ARGUMENTS & RELIEF REQUESTED

20.     Estes is seeking relief from the automatic stay in an abundance of caution.  The receivables owed by the Non-Debtor Third Party Shippers—who are shared customers of the Debtor and Estes—are not property of the Debtor's estate under the Interstate Commerce Act and the law of the Eleventh Circuit.

21.     Indeed, Estes has an independent right of action under the Interstate Commerce Act to pursue the non Non-Debtor Third Party Shippers for its receivables, separate and distinct from any receivable of the Debtor.

22.     Estes understands that the Debtor has argued that its "interests" might be implicated by Estes' pursuit of the receivables.  The stay does not currently extend to cover any non-debtor third party any such extension must be sought and approved by the Court.  Estes seeks only to collect receivables for which the shipper is liable to Estes.  Estes disagrees, to the extent that the Debtor was to request and extension of the stay, that any interest of the Debtor is implicated which warrants an extension of the automatic stay.  Furthermore, upon information and belief, the Debtor no longer has a receivable due to it from these Non-Debtor Third Party Shippers with respect to the receivables at issue.  Therefore, any alleged interest of the Debtor is greatly diminished.

23.     Should the Court believe that the automatic stay applies to these circumstances, Estes requests relief from the automatic stay for cause.  The Debtor is unable to provide adequate protection of an interest in their accounts receivable.  Estes has asked for simple accounting from the Debtor in regard to receivables and the Debtor has not provided one to date.  Furthermore, to the extent that any amounts owed to Estes by a shared customer have not been provided to Estes, this shows lack of adequate assurance of protection of Estes' interests, specifically its

receivables. Estes believes that the Debtor has an opportunity to provide sufficient cash flow through its partnership with Estes should the Court approve the Settlement Agreement between the parties. Without approval of the Settlement Agreement, however, the Debtor's prospects are uncertain and there will undoubtedly be litigation between the Debtor, Estes and other creditors in the bankruptcy.

24.    Moreover, Estes has only eighteen (18) months from the date of delivery by Estes to collect on its debt from the Non-Debtor Third Party Shippers under the applicable statute of limitations. This lack of adequate protection of money entrusted to the Debtor, the Debtor's inability to provide account for these payments, and the short time frame within which Estes has to collect on its debt from the Non-Debtor Third Party Shippers constitutes cause to lift the automatic stay.

25.    Additionally, pursuant to paragraph 2.b. of the Carrier Order, and because the Settlement Agreement states that time is of the essence, Estes requests an expedited hearing to resolve these issues.

## I.    The Stay Should Be Lifted to Permit Collection of Accounts Receivables That Are Not the Property of the Debtor's Estate

26.    Estes seeks relief from the stay to permit collection of the accounts receivable of non-debtor third parties that are shared customers between the Debtor and Estes. The accounts receivable in question are not the property of the Debtor's estate pursuant to 11 U.S.C. § 541 and are therefore not subject to the automatic stay. Out of an abundance of caution, Estes therefore and in accordance with its good faith discussions with the debtor regarding the Final Order, Estes respectfully requests an order lifting the stay under 11 U.S.C. § 362(d)(2).

27.    Estes has an independent right of action under the Interstate Commerce Act to pursue the Non-Debtor Third Party Shippers for its receivables and is not disturbing any property

of the estate of the Debtor by doing so.  In *Southern Pacific Transportation Co. v. Commercial Metals Co.*, the Supreme Court found that:

> The bill of lading is the basic transportation contract between the shipper/consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers…***Unless the bill provides to the contrary, the consignor remains primarily liable for the freight charges.***

456 U.S. 336, 342 (1982) (emphasis added).

28.     For each Non-Debtor Third Party Shipper to which Estes seeks to lift the say, the shared customer's payment obligations are primary and remain unrebutted, as each shipper failed to sign a nonrecourse clause known as Section 7 of the bill of lading.  *See National Shipping Co. of Saudi Arabia v. Omni Lines*, 106 F.3d 1544, 1546-47 (11th Cir. 1997) ("should the shipper wish to avoid liability for double payment, it must take precaution to deal with a reputable freight forwarder or contract with the carrier to secure its release"); *Spedag*, 2008 U.S. Dist. LEXIS 62911, at * 18-19 (finding consignee liable to carrier even though consignee had paid freight forwarder). *See also Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008); *Hawkspere Shipping Company, Ltd. v. Intamex, S.A.*, 330 F.3d 225 (4th Cir. 2003); *Bestway Systems, Inc. v. Gulf Forge Co., et al.*, 100 F.3d 31, 32 (5th Cir. 1996) ("as [shipper] concedes, its failure to sign the section 7 disclaimer renders it liable to [carrier]. ").

29.     In *National Shipping*, the Eleventh Circuit considered a matter with material facts substantially similar to the situation here: a shipper (like Mad Catz) contracted with a freight broker (like the Debtor) to ship its goods; the broker (the Debtor) engaged a carrier (Estes) to transport the goods; and, after the goods were delivered, the carrier sued the shipper to recover its freight charges which the broker failed to remit. *National Shipping*, 106 F.3d at 1545. Here, as in *National Shipping*, the shipper had paid the broker for the freight charges, but the broker failed to remit payment to the carrier. *Id.* The court ultimately held that the bill of lading bound

9

the shipper and the carrier, and the shipper would even pay twice if it failed to release itself from

liability to the carrier:

> Upon consideration, we believe that the *Strachan* approach--the shipper is liable unless released by the carrier--is the best rule... After all, the bill of lading is a contract between the carrier and the shipper and the carrier has a contractual right to expect payment pursuant to that bill. Should the shipper wish to avoid liability for double payment, it must take precaution to deal with a reputable freight forwarder or contract with the carrier to secure its release. In adopting the same standard we do today, the Fifth Circuit noted that there are legitimate policy reasons for adopting a rebuttable presumption in favor of shipper liability:

> "We think that our result comports with economic reality. A freight forwarder provides a service. He sells his expertise and experience in booking and preparing cargo for shipment. He depends upon the fees paid by both shipper and carrier. He has few assets, and he books amounts of cargo far exceeding his net worth. Carriers must expect payment will come from the shipper, although it may pass through the forwarder's hands. While the carrier may extend credit to the forwarder, there is no economically rational motive for the carrier to release the shipper. The more parties that are liable, the greater the assurance for the carrier that he will be paid." *Strachan Shipping Co. v. Dresser Industries, Inc.*, 701 F.2d 483, 489, 490 (5th Cir. 1983).

*National Shipping,* 106 F.3d at 1546-47.

30.    It has thus been established in the Eleventh Circuit and elsewhere that a shipper's

liability to pay the carrier for transportation of its goods is not relieved even upon the shipper's

payment of its freight broker's invoices. Indeed, the carrier expects payment under the bill of

lading, the contract between the shipper and the carrier, and not some contract between the

shipper and its freight broker.

31.    The Debtor has conceded this point, citing to *National Carriers* and stating "with

respect to obligations owed to Carriers, the Carriers may have direct claims against the Debtor's

customers." *See* IC Motion at ¶ 17.

32.    Accordingly, Estes is well within its rights to pursue each Non-Debtor Third Party Shipper without regard to whether such shippers have already paid the Debtor, since a claim of double payment in the absence of a release from the carrier is no defense.[1]

33.    The monies Estes seeks to recover are not property of the Debtor's estate and Estes' actions to pursue such receivables would not be in violation of the automatic stay were it to pursue its receivables directly from any of the non-debtor third parties.

34.    Therefore, relief from stay to permit Estes to collect receivables directly from non-debtor third parties is appropriate under 11 U.S.C. § 362(d)(2).

## II.    Alternatively, the Automatic Stay Should Be Lifted for Cause Due to Debtor's Lack of Adequate Protection

35.    Alternatively, Estes seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, in order to collect the accounts receivable.

36.    Section 362(d)(1) permits the Court, on request of a party in interest and after notice and a hearing, to terminate, annul, modify or condition the automatic stay for cause.  11 U.S.C §362(d)(1).  The party requesting relief from the automatic stay must present a *prima facie* showing of "cause."  *See In re Unanue-Casal.* 159 B.R 90 (D.P.R. 1993).   Courts have interpreted "cause" under §362(d)(1) to include a specific set of circumstances. *See, e.g., In re Dixie Broad., Inc.,* 871 F. 2d 1023, 1026 (11th Cir. 1989) (holding a petition filed in bad faith justifies lifting the stay); *In re Robbins,* 964 F.2d 342, 346 (4th Cir. 1992) (concluding cause exists where lifting the stay will promote judicial economy).

37.    In determining whether cause exists for lifting the automatic stay, "[c]ourts conduct a case-by-case inquiry and apply a totality of the circumstances test." *In re Mack,* 2007 WL 1222575, at *2 (M.D. Fla. Apr. 24, 2007) (citation omitted).   In determining whether cause

---

[1] Unless and until Estes is made whole, the Debtor also remains liable to Estes.  Estes reserves its rights with respect to any claims it may have against the Debtor related to these, or any other, shippers.

has been shown, a court balances the potential hardship on the moving party if the stay is not lifted against the potential prejudice to the debtor and its estate if the stay is lifted. *See In re Paxson Electric Co.*, 242 B.R. 67, 70 (M.D.Fla.1999) (citations omitted).

38.     Section 362(d)(1) expressly provides that a party's "lack of adequate protection of an interest in property" constitutes cause for relief from the automatic stay.  In other words, if the Debtor does not provide adequate protection for Estes' interest in the receivables, then Estes is entitled to relief from the automatic stay to collect the accounts receivable that are not the property of the Debtor's estate.

39.     After multiple requests to the Debtor to determine what amounts the Debtor has been paid by Mad Catz and other non-debtor third parties, Estes and the Debtor recently reconciled and agreed upon the amounts paid.

40.     Nevertheless, because the Committee and Lender have not indicated whether they agree to the terms of the Settlement Agreement, Estes is left without adequate assurance that the Debtor will pay Estes the amounts it is owed.  Without an agreement with Estes, the estate faces potentially costly litigation with Estes and estate resources are better put towards a plan that includes Estes and will help the Debtor fund a successful reorganization.

41.     As a result, upholding its statutory right to protect its interests under applicable federal law, it is appropriate for Estes to obtain adequate protection of its interest in the receivable pursuant to §362(d)(1) by, in the excess of caution, obtaining permission from this Court to contact the Non-Debtor Third Party Shippers in the ordinary course of business and gaining relief from the automatic stay to collect the accounts receivable that are not the property of the Debtor's estate.

42.    Estes disagrees that any interest of the Debtor is implicated which warrants an extension of the automatic stay. As noted above, Estes seeks to recover only receivables for which the Non-Debtor Third Party Shippers are liable to Estes independent of any payment obligation to the Debtor. Moreover, there is no contract between Estes and the Debtor and, therefore, unlike other LTL ICs Estes is not subject to a non-solicitation agreement. As such, there is no contractual prohibition on Estes contacting any former, present or prospective customer of the Debtor.

43.    The potential prejudice to the Debtor's alleged interest—which Estes' anticipates the Debtor to argue is interruption to cash flow from customers and threatened continued relationships with customers[2]—is speculative at best.

44.    The potential prejudice to Estes is very real. With the automatic stay in place, and without a determination from this Court that Estes can seek recovery from the Non-Debtor Third Party Shippers, Estes is effectively estopped from pursuing a valid means of recovering over $537,000 of properly owed receivables and has no assurance from the Debtor that the receivables held by the Debtor, which are not property of the estate, and are held in trust for Estes, is adequately protected.

45.    Moreover, pursuant to 18 U.S.C. §§ 14705(a) and (g), Estes has only eighteen months from the date of delivery within which it can bring an action against a shipper (or the Debtor), for recovery of charges related to the interstate transport of goods. With respect to the Non-Debtor Third Party Shippers, the statue of limitations would bar an action for recovery by Estes beginning in April 2012 for certain receivables. The automatic stay is highly likely to still be in place at that time. Should the statute of limitations run, Estes would be denied its statutory right to pursue the Non-Debtor Third Party Shippers and would be left only with a potential

---

[2] *See* Emergency Motion at 2.

recovery from the Debtor whose lack of adequate assurance puts Estes' entire receivable in jeopardy.

46.     It would be wholly inequitable for Estes to be prevented from obtaining the benefits of the Settlement Agreement while simultaneously being denied its rights to collect receivables from the Non-Debtor Third Party Shippers. This is especially true because Estes, unlike other LTC ICs, does not have any contract with the Debtor that would prohibit it from contacting the Non-Debtor Third Party Shippers in the ordinary course of business.

47.     Accordingly, the balance of harm strongly favors Estes and the automatic stay should be lifted for lack of adequate protection.

48.     Additionally, the Debtors have made a determination that the less than truckload market is a desirable market that has long-term potential and a market which they wish to enter. The Debtors have made the further determination that they need a carrier and that Estes is that carrier.

49.     Estes has worked in good faith and at arms-length with the Debtor to reach an amicable resolution to the amounts it is owed. Estes has not pursued the receivables from the Non-Debtor Third Party Shippers, a settlement agreement has in fact been reached and Estes looks forward to its partnership with the Debtors. If the Settlement Agreement is not approved, however, Estes should be entitled to collect the outstanding receivables from the Non-Debtor Third Party Shippers. Therefore, the automatic stay should be lifted.

## III.     EXPEDITED HEARING IS WARRANTED

50.     Pursuant to the Carrier Order, "[i]f the parties are not able to reach a resolution, either party may request an expedited hearing (subject to the Court's calendar) for the Court to resolve the issues." Carrier Order at ¶ 2.b.

51.     Upon information and belief, because the Settlement Agreement states that time is of the essence, the Debtor is filing the Approval Motion and requesting an expedited hearing.

52.     Estes requests that this Motion also be given an expedited hearing scheduled for the same day as the hearing on the Approval Motion.

53.     As noted above, the statue of limitations is running on Estes' claims against the Non-Debtor Third Party Shippers.

54.     While Estes supports the Approval Motion and favors entry of an order approving the Settlement Agreement, Estes must also protect its rights as it relates to the Non-Debtor Third Party Shippers.  If the Approval Motion is denied, Estes will be without recourse against such parties unless this Motion is granted.

55.     Because the basis for Settlement Agreement rests, in part, on the rights as to Non-Debtor Third Party Shippers that form the basis of this Motion, hearing both motions at the same time and on an expedited basis promotes judicial economy and is in the best interests of the Debtor's estate.

[THIS SPACE INTENTIONALLY LEFT BLANK]

WHEREFORE, in the excess of caution, Estes respectfully requests that the Court: (1) modify the stay to permit Estes to contact certain non-debtor third parties in the ordinary course of business; (2) grant relief from automatic stay under 11 U.S.C § 362 to permit collection of accounts receivable that are not property of the Debtor's estate; (3) grant an expedited hearing; and (4) grant such other and further relief as is appropriate under the circumstances.

Dated: May 11, 2011
        Coral Gables, Florida

**Lawrence J. Roberts & Associates, P.A.**


_____ /s/ _Lawrence J. Roberts_ _____
Lawrence J. Roberts (FL Bar No. 343218)
249 Catalonia Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-7882
Facsimile: (305) 441-7883
Email: lroberts@lrobertsandassociates.com

            -and-


Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com

_Attorneys for Estes Express Lines_

FILED VIA MAIL

MAY 12 2011

CLERK, U.S. BANKRUPTCY
COURT MIDDLE
DISTRICT FLORIDA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARGO TRANSPORTATION | ) | Case No. 8:11-bk-432-MGW |
| SERVICES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss: |
| COUNTY OF NEW CASTLE | ) |

Shelley A. Kinsella, being duly sworn, hereby deposes and says:

1.    I am a competent adult and am otherwise capable of making this sworn statement.

2.    I am an attorney with the law firm of Elliott Greenleaf in Wilmington, Delaware, which is counsel to Estes Express Lines in this action. On May 11, 2011, I caused hereby certify that I caused a copy of Estes Express Lines' Emergency Motion for Relief from Stay to Permit Collection of Accounts Receivable that are not Property of the Debtor's Estate and Request for Expedited Hearing to be served on May 11, 2011 via U.S. First Class Mail and via Foreign First Class Mail upon the parties listed on the attached service list.

3.    I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  May 11, 2011
        Wilmington, Delaware

**ELLIOTT GREENLEAF**

Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware  19801
Telephone:  (302) 384-9400
Facsimile: (302) 384-9399
Email:  sak@elliottgreenleaf.com
*Attorney for Estes Express Lines*

Sworn to and Subscribed
Before me this 11th day of
May, 2011.

Notary Public

KRISTIN A. McCLOSKEY
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Aug. 6, 2012

*Via First Class Mail*
Cargo Transportation Services, Inc.
1300 Sawgrass Corporate Parkway, Suite 110
Sunrise, FL 33323
(Debtor)

*Via First Class Mail*
c/o Dawn A. Carapella
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, P.A.
2700 Bank of America Plaza
101 East Kennedy Blvd.
Tampa, FL 33602

*Via First Class Mail*
Ryder Truck Rental, Inc.
Kevin Sauntry
Corporate Collection Manager
6000 Windward Parkway
Alpharetta, GA 30005

*Via First Class Mail*
Comerica Bank
c/o Kenneth Mather
Broad and Cassel
Regions Bank Building, Suite 3500
Tampa, FL 33602

*Via First Class Mail*
Advance Business Capital LLC
c/o Michael W. Ullman, Esq.
Ullman & Ullman, P.A.
150 East Palmetto Park Road, Suite 700
Boca Raton, FL 33432

*Via First Class Mail*
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

*Via First Class Mail*
Ryder Truck Rental, Inc.
c/o Roger J. Haughey, II
Sivyer Barlow & Watson, P.A.
401 E. Jackson Street, Suite 2225
Tampa, FL 33602

*Via First Class Mail*
General Electric Capital Corporation
c/o John S. Schoene, Esq.
100 E. Sybelia Avenue, #205
Maitland, FL 32751

*Via Foreign First Class Mail*
Precision Truck Lines, Inc.
Ravi Annand, Vice President of Finance
8111 Huntington Road
Woodbridge, Ontario
Canada, L4H 0S6

*Via First Class Mail*
AAA Cooper Transportation
Michelle Lewis, Director
Admin. & Customer Accounts
1751 Kinsey Road
Dothan, AL 36303

*Via First Class Mail*
Nicole Peair, Esq.
U.S. Department of Justice
Office of the U.S. Trustee, Region 21
501 E. Polk Street, Suite 1200
Tampa, FL 33602

*Via First Class Mail*
Comerica Bank
c/o Roy S. Kobert
Broad and Cassel
390 North Orange Avenue, Suite 1400
Orlando, FL 32801

*Via First Class Mail*
Office of the U.S. Attorney
Attn: Civil Process Clerk
400 North Tampa Street, Suite 3200
Tampa, FL 33602

*Via First Class Mail*
R & L Transfer Inc.
c/o Michael Shroyer
Chief Financial Officer
600 Gillam Road
Wilmington, OH 45177

*Via First Class Mail*
Southeastern Freight Lines
P.O. Box 100104
Columbia, SC 29202

*Via First Class Mail*
Old Dominion Freight Line, Inc.
P.O. Box 198475
Atlanta, GA 30384

*Via First Class Mail*
TQT Company
6410 N. Hubert Avenue
Tampa, FL 33614

*Via First Class Mail*
America Max LLC
P.O. Box 961029
Fort Worth, TX 76161

*Via First Class Mail*
DAT Truck Lines Inc.
P.O. Box 2617
Guasti, CA 91743

*Via First Class Mail*
AIT Worldwide Logistics Inc.
P.O. Box 66730
Chicago, IL 60666

*Via First Class Mail*
New England Motor Freight Inc.
P.O. Box 6031
Elizabeth, NJ 07207

*Via First Class Mail*
Universal Am-Can, Inc.
P.O. Box 712969
Cincinnati, OH 45271

*Via First Class Mail*
AM Trucking Inc.
P.O. Box 11099
Olympia, WA 98508

*Via First Class Mail*
MercuryGate International
1654 Old Apex Road
Cary, NC 27513

*Via First Class Mail*
RT Express
P.O. Box 840267
Dallas, TX 75284

*Via First Class Mail*
J.D. Associates, LLC
P.O. Box 128
Deland, FL 32721

*Via First Class Mail*
VIP Freight Inc.
4160 W. 16th Avenue, Suite 304
Hialeah, FL 33029

*Via First Class Mail*
MI Transportation
650 W. Market Street
Gratz, PA 17030

*Via First Class Mail*
Cargo Logistics Corp.
5567 NW 72 Avenue
Miami, FL 33166

*Via First Class Mail*
Craig V. Rasile, Esq.
Hunton & Williams, LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
(Committee's Counsel)

*Via First Class Mail*
Daniel F. Blanks
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202

*Via First Class Mail*
Royal Caribbean Cruises
2935 W. Corporate Lakes Blvd.
Weston, FL 33331

*Via First Class Mail*
Peter M. Feaman, P.A.
3615 West Boynton Beach Blvd.
Boynton Beach, FL 33436

*Via First Class Mail*
American Express Bank, FSB
c/o Gilbert B. Weisman, Esq.
Becket and Lee LLP
P.O. Box 3001
Malvern, PA 19355

*Via First Class Mail*
Edward J. Peterson, III, Esq.
Stichter, Riedel, Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, FL 33602
(Debtor's Counsel)

*Via First Class Mail*
Sara F. Holladay-Tobias
McGuireWoods LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202

*Via First Class Mail*
Apex Capital Corp.
c/o Mark A. Gilbert, Esq.
Coleman Talley, LLP
P.O. Box 5437
Valdosta, GA 31603

*Via First Class Mail*
Zachary J. Eskau, Esq.
Dawda, Mann, Mulcahy & Sadler, PLC
39533 Woodward Avenue, Suite 200
Bloomfield Hills, MI 48304

*Via First Class Mail*
Stephen P. Hale, Esq.
Bert Echols, Esq.
The Hale Law Group, PLLC
88 Union Avenue, Suite 700
Memphis, TN 38103

*Via First Class Mail*
Demco Express
3501 Tarrant Mani Street
Euless, TX 76040