# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

In re:

CARGO TRANSPORTATION
SERVICES, INC.,

      Debtor.

_____/

Chapter 11

Case No. 8:11-bk-00432-MGW

## RESPONSE IN OPPOSITION TO OLD DOMINION FREIGHT LINE, INC.'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Cargo Transportation Services, Inc. (the "Debtor" or "CTS"), by counsel, hereby responds to *Old Dominion Freight Line, Inc.'s Amended Motion for Relief from the Automatic Stay, to the Extent Applicable, to Exercise Its Rights to Seek Payments from Its Customers* (Doc. No. 329) (the "Motion"), and states as follows:

1.    Old Dominion Freight Line, Inc. ("Old Dominion") is not entitled to pursue the Debtor's customers (the "Customers") directly for unpaid pre-petition amounts owed by the Debtor because (i) the automatic stay prevents Old Dominion from attempting to control property of the estate or collect pre-petition claims from the Customers; (ii) Old Dominion has not established "cause" to lift the automatic stay, and there is no basis to lift the stay at this time; and (iii) it is unclear whether the Customers are even liable to Old Dominion for payment of the Debtor's pre-petition obligation to Old Dominion in light of the factual issues, some of which are illustrated by the bills of lading attached as Exhibit "A" to the Motion.

## ARGUMENT

2.    Old Dominion is not entitled to relief from the automatic stay because by threatening to attack the Debtor's Customers, Old Dominion is attempting to control

property of the estate in violation of Section 362(a)(3) of Title 11 of the United States Code (the "Bankruptcy Code") and collect a pre-petition claim in violation of Section 362(a)(6). Moreover, Old Dominion has failed to meet its burden of proof and has neither alleged nor established any basis for lifting the automatic stay under Section 362(d)(1) or (2) of the Bankruptcy Code. Finally, the bills of lading attached to the Motion are illustrative of some of the factual circumstances that demonstrate why Old Dominion may not have any legal right to pursue the Customers directly.

(a) **The automatic stay prevents Old Dominion from attempting to control property of the estate or collect pre-petition claims from the Debtor's Customers.**

(i) In asserting that the automatic stay does not bar Old Dominion from pursuing the Debtor's Customers, Old Dominion attempts to artificially distinguish the Customers from those that are engaged in an "Intermediary Relationship" with the Debtor. However, no such distinction exists – one hundred percent (100%) of the Customers tender freight to the Debtor to ship, and no Customer merely uses the Debtor for billing services as Old Dominion inaccurately alleges. Each of the Debtor's Customers are required to create an account with the Debtor and enter an agreement with the Debtor to use its services. Accordingly, the Customer has an expectation that it is doing business with the Debtor and not a third party like Old Dominion. To allow Old Dominion (or any other carrier) to contact the Customers directly would undermine the Debtor's business operations and irreparably harm the estate, as Customers will no longer use the Debtor's services.

(ii)     Lawsuits against non-debtor entities are properly stayed where the lawsuit would interfere with the debtor's reorganization efforts. *Eastern Airlines, Inc. v. Rolleston (In re Ionosphere Clubs Inc.)*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990).  In this case, Old Dominion's threatened collection efforts would interfere (and, indeed, already have interfered) with the Debtor's reorganization efforts.  By pursuing the Debtor's Customers directly, Old Dominion is effectively controlling and diminishing property of the estate, thus irreparably damaging the Debtor's crucial relationships with its Customers.[1]  In other words, to allow Old Dominion to collect from the Debtor's Customers would be to permit Old Dominion to do indirectly what the automatic stay prevents it from doing directly – collecting a pre-petition obligation of the Debtor, while giving rise to claims by the Customers against the Debtor.  *See In re Nortel Networks Corp.*, 2010 WL 891263, at *6 (Bankr. D. Del. Mar. 9, 2010) ("Post-petition attempts to assess, impose and/or liquidate a debt against a Chapter 11 debtor outside of the bankruptcy process go to the essence of the Chapter 11 claims process, and are the very reason why there is an automatic stay.").

Courts have generally extended the automatic stay to "the 'unusual situation' where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third party is entitled to indemnification by the debtor for any judgment taken against it." *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004) (quoting *Fleet Bus. Credit, LLC*

---

[1] The Debtor reserves all rights to assert any violations of the automatic stay with respect to Old Dominion. The Debtor notes that both the original motion for relief from stay filed by Old Dominion (Doc. No. 286) and this Motion were unnecessarily served on the Debtor's Customers.  Inasmuch as the Federal Rules of Bankruptcy Procedure do not require service on the Customers, the Debtor can only believe that Old Dominion intentionally and willfully intended to harm the Debtor and threaten the Debtor's Customers.

*v. Wings Restaurants, Inc.*, 291 B.R. 550, 553 (N.D. Okla. 2003)). Here, if Old Dominion is permitted to pursue the Customers, then the Customers will undoubtedly assert claims against the Debtor by virtue of having paid twice for the same carrier services (once to the Debtor, and once again to Old Dominion). This case is also analogous to others involving general contractors, in which bankruptcy courts have also determined that the automatic stay prevents subcontractors from pursuing non-debtor owners. *Middleton & Dugger Plumbing & Heating, Inc. v. Richardson Builders, Inc. (In re Richardson Builders, Inc.)*, 123 B.R. 736, 740-41 (Bankr. W.D. Va. 1990). Of course, the Debtor's continued business relationships with its valued Customers would also be needlessly and irreparably destroyed in the process.

**(b)** **Old Dominion has not established cause or any other basis to lift the stay at this time.**

Section 362(d)(1) provides for relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." The movant bears the burden of establishing an initial showing of cause. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). The Motion does not articulate any specific facts demonstrating "cause." If the creditor fails to satisfy this "initial burden of demonstrating cause, relief from the automatic stay should be denied." *In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004).

**(c)** **It is unclear whether the Customers are liable to Old Dominion for payment of the Debtor's pre-petition obligation to Old Dominion.**

(i) Throughout the Motion, Old Dominion oversimplifies the analysis as to whether the Debtor's Customers are liable to Old Dominion. Old

Dominion assets that "the bills of lading are 'straight bills of lading' and are between the shippers . . . and Old Dominion," and that "none of the bills of lading is marked 'nonrecourse' or 'prepaid.'"

(ii)     The Eleventh Circuit has established that a host of factual issues must be considered by a court when determining whether evidence exists that a shipper/consignor is liable for payment to a carrier.  *See National Shipping Co.*, 106 F.3d at 1546-47; *Naviera Neptuno S.A. v. All Int'l Freight Forwarders, Inc.*, 709 F.2d 663, 665 (11th Cir. 1983).   Second, the very documents Old Dominion relies on in its Motion create factual ambiguities that arguably eviscerate Old Dominion's argument that the Customer is ultimately liable for payment on the shipment.  For example:

- The bills of lading do not unambiguously indicate that the Customer is the shipper.

- Two of the bills of lading attached in support of the Motion are marked "prepaid," which is clearly inconsistent with Old Dominion's contention that "none of the bills of lading is marked 'nonrecourse' or 'prepaid.'"

- The bills of lading Old Dominion relies upon are not uniform "straight bills of lading" (as that term of art is used in the transportation industry).   Rather, they are non-uniform bills of lading issued by the Debtor, which may be a pivotal factual issue in determining if CTS's Customers have any liability to Old Dominion.

- On other of the bills of lading which indicate "third party" as a freight term, the Debtor is listed as the "third party." The bills of lading could be construed to indicate that parties to the transaction understood that Old Dominion was being paid by the Debtor by virtue of an extension of credit to the Customer, particularly in light of the contractual relationships between the Debtor and Old Dominion and the Debtor and its Customer.

The inconsistencies demonstrated by the bills of lading attached in support of the Motion and the general complexity as to the rights of the parties under the bills of lading are the very reasons why stay relief is not appropriate at this time.

## <u>CONCLUSION</u>

If Old Dominion prevails on its Motion, Old Dominion will thwart one of the primary purposes of the Debtor's seeking bankruptcy protection, to the detriment of CTS's other creditors. The Debtor has diligently worked to advance this case, demonstrated by the recently filed *Plan of Reorganization of Cargo Transportation Services, Inc.* (Doc. No. 353) (the "<u>Plan</u>") and *Disclosure Statement in Connection with Plan of Reorganization of Cargo Transportation Services, Inc.* (Doc. No. 354). CTS's Plan addresses payment of the claims of Old Dominion, and Old Dominion should not be permitted to force the Debtor to prematurely choose between either paying Old Dominion or having its customer relationships irreparably harmed (and potentially destroying its business operations). In fact, these are the very choices the automatic stay is designed to prevent a debtor from having to make.

WHEREFORE, the Debtor respectfully requests that the Court enter an order denying the Motion, and for such other and further relief as the Court deems appropriate.

DATED this 24th day of May 2011.

/s/ *Kathleen L. DiSanto*
Chad S. Bowen
Florida Bar No. 0138290
Kathleen L. DiSanto
Florida Bar No. 58512
**Jennis & Bowen, P.L.**
400 N. Ashley Dr., Ste. 2540
Tampa, FL 33602
Telephone: (813) 229-1700
Facsimile: (813) 229-1707
Email: kdisanto@jennisbowen.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been furnished via CM/ECF to: **Old Dominion Freight Line, Inc., Daniel F. Blanks and Sara F. Holladay-Tobias**, 50 N. Laura Street, Suite 3300, Jacksonville, FL 32202; **Nicole Peair, US Trustee's Office**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; and to those parties receiving electronic notices via CM/ECF in the normal course of business on this 24th day of May 2011.

/s/ *Kathleen L. DiSanto*
Kathleen L. DiSanto