UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

CARGO TRANSPORTATION                    Case No. 8:11-bk-00432-MGW
SERVICES, INC.,                         Chapter 11

      Debtor.

_____/

## AMENDED PLAN OF REORGANIZATION OF
## CARGO TRANSPORTATION SERVICES, INC.

David S. Jennis
Florida Bar No. 775940
Kathleen L. DiSanto
Florida Bar No. 0058512
**JENNIS & BOWEN, P.L.**
400 North Ashley Dr., Ste. 2540
Tampa, Florida  33602
Telephone: (813) 229-1700
Facsimile: (813) 229-1707
djennis@jennisbowen.com
Counsel to Debtor and
Debtor-In-Possession

Dated:  August 12, 2011

THIS AMENDED PLAN OF REORGANIZATION HAS NOT BEEN CONFIRMED BY THE BANKRUPTCY COURT.  THE HEARING TO CONSIDER THE CONFIRMATION OF THIS AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1129 OF THE BANKRUPTCY CODE IS CURRENTLY SCHEDULED FOR **SEPTEMBER 14, 2011 AT 1:30 P.M.**  THE DEBTOR RESERVES THE RIGHT TO MODIFY OR SUPPLEMENT THIS AMENDED PLAN OF REORGANIZATION AND THE ACCOMPANYING AMENDED DISCLOSURE STATEMENT UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION.  THE DEBTOR IS NOT CURRENTLY SOLICITING VOTES ON THE AMENDED PLAN OF REORGANIZATION.

# TABLE OF CONTENTS

ARTICLE 1 ............................................................................................................................ 1
  DEFINITIONS ................................................................................................................... 1
ARTICLE 2 .......................................................................................................................... 14
  TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX
  CLAIMS ......................................................................................................................... 14
  2.1  Administrative Expense Claims ....................................................................... 14
  2.2  DIP Financing Claims ........................................................................................ 15
  2.3  Priority Tax Claims ............................................................................................ 15
ARTICLE 3 .......................................................................................................................... 15
  CLASSIFICATION OF CLAIMS AND INTERESTS ..................................................... 15
  3.1  Class 1 – Unsecured Priority Claims .............................................................. 16
  3.2  Class 2 – Comerica Secured Claim .................................................................. 16
  3.3  Class 3 – Other Secured Claims ...................................................................... 16
  3.4  Class 4 – Administrative Convenience Claims .............................................. 17
  3.5  Class 5 - Performing CV/IC Claims ................................................................. 17
  3.6  Class 6 - Non-Performing CV/IC Claims ........................................................ 18
  3.7  Class 7 – General Unsecured Claims .............................................................. 18
  3.8  Class 8 – Unsecured Intercompany Claims .................................................... 18
  3.9  Class 9 – Equity Interests ................................................................................ 18
ARTICLE 4 .......................................................................................................................... 18
  TREATMENT OF ALLOWED CLAIMS AND INTERESTS ......................................... 18
  4.1  Class 1 – Priority Claims .................................................................................. 18
  4.2  Class 2 – Comerica Secured Claim .................................................................. 19
  4.3  Class 3 – Other Secured Claims ...................................................................... 20
  4.4  Class 4 – Administrative Convenience Claims .............................................. 23
  4.5  Class 5 – Performing CV/IC Claims ................................................................. 24
  4.6  Class 6 – Non-Performing CV/IC Claims ........................................................ 25
  4.7  Class 7 – General Unsecured Claims .............................................................. 26
  4.8  Class 8 – Intercompany Claims ....................................................................... 26
  4.9  Class 9 – Equity Interests ................................................................................ 27
ARTICLE 5 .......................................................................................................................... 27
  MEANS FOR EXECUTION OF PLAN ........................................................................... 27
  5.1  Segregation of Effective Date Cash and Effective Date Receivable Assets ...... 27
  5.2  Funding of Post-Effective Date Operations ................................................... 27
  5.3  Management of the Reorganized Debtor ........................................................ 27
  5.4  Continued Corporate Existence ....................................................................... 27
  5.5  Corporate Action ............................................................................................... 28
  5.6  Payments of Claims and Interests ................................................................... 28
  5.7  Addresses for Distributions to Holders of Allowed Claims ......................... 28
  5.8  Disallowance and Expunging of Paid Claims ................................................. 28
  5.9  Disputed Claims ................................................................................................. 28
  5.10 Unclaimed Property .......................................................................................... 30
  5.11 Exoneration and Reliance ................................................................................ 30
  5.12 Effectuating Documents and Further Transactions ...................................... 30

5.13   **Creation and Administration of Plan Trust.** ....................................................... 31
**ARTICLE 6** ............................................................................................................ 32
    **EFFECTS OF PLAN CONFIRMATION** ............................................................ 32
    6.1   **Discharge and Injunction.** ................................................................................ 32
    6.2   **Discharge of Claims and Non-Debtor Releases by Debtors.** ........................... 33
    6.3   **CV/IC Injunction.** .............................................................................................. 34
    6.4   **Release by Holders of Claims and Equity Interest Holders.** .......................... 34
    6.5   **Exculpation.** ....................................................................................................... 35
    6.6   **No Liability for Tax Claims.** ............................................................................. 35
    6.7   **Vesting.** ............................................................................................................... 35
    6.8   **Retention and Enforcement of Claims or Interests.** ........................................ 36
    6.9   **Dissolution of Committee.** ................................................................................ 36
**ARTICLE 7** ............................................................................................................ 36
    **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ... 36
    7.1   **Assumption and Rejection of Executory Contracts and Unexpired Leases.** ... 36
    7.2   **Cure.** .................................................................................................................. 37
    7.3   **Damages Upon Rejection.** ................................................................................ 37
**ARTICLE 8** ............................................................................................................ 38
    **EFFECTUATION AND SUPERVISION OF THE PLAN** ................................... 38
    8.1   **Jurisdiction.** ....................................................................................................... 38
    8.2   **General Retention.** ............................................................................................ 38
    8.3   **Specific Purposes.** ............................................................................................ 38
**ARTICLE 9** ............................................................................................................ 40
    **CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS** ... 40
    9.1   **Conditions to Confirmation.** ............................................................................ 40
    9.2   **Conditions to Effectiveness.** ............................................................................ 40
    9.3   **Waiver.** ............................................................................................................... 40
**ARTICLE 10** .......................................................................................................... 41
    **ACCEPTANCE OR REJECTION OF PLAN** ...................................................... 41
    10.1  **Each Impaired Class Entitled to Vote Separately.** .......................................... 41
    10.2  **Class Acceptance Requirement.** ....................................................................... 41
    10.3  **Cramdown.** ........................................................................................................ 41
**ARTICLE 11** .......................................................................................................... 41
    **MISCELLANEOUS PROVISIONS** ...................................................................... 41
    11.1  **Revocation of Plan.** .......................................................................................... 41
    11.2  **Headings.** ........................................................................................................... 41
    11.3  **Due Authorization by Holders of Claims** ....................................................... 42
    11.4  **Time.** .................................................................................................................. 42
    11.5  **Transactions on Business Days.** ....................................................................... 42
    11.6  **Payment on Distribution Dates.** ....................................................................... 42
    11.7  **Fractional Dollars.** ........................................................................................... 42
    11.8  **Unclaimed or De Minimis Distributions.** ....................................................... 42
    11.9  **Modification of Payment Terms.** ..................................................................... 43
    11.10 **Entire Agreement.** ............................................................................................. 43
    11.11 **Confirmation Order.** ......................................................................................... 43
    11.12 **Further Authorizations.** .................................................................................... 43

**11.13 <u>Exemption from Securities Laws</u>**...................................................................... **43**
**11.14 <u>Transfer Taxes</u>.** ............................................................................................. **44**
**11.15 <u>Recordable Order</u>.** ....................................................................................... **44**
**11.16 <u>Governing Law</u>.** ........................................................................................... **44**
**11.17 <u>Severability</u>.** ................................................................................................ **44**
**11.18 <u>No Interest</u>.** ................................................................................................. **44**
**11.19 <u>No Attorneys' Fees</u>.** .................................................................................. **44**
**11.20 <u>Consent to Jurisdiction</u>.** ......................................................................... **45**
**11.21 <u>Setoffs</u>.** ....................................................................................................... **45**
**11.22 <u>Successors and Assigns</u>.** .......................................................................... **45**
**11.23 <u>Reservation</u>.** ................................................................................................ **45**
**ARTICLE 12** ...................................................................................................... **45**
**MODIFICATION OF PLAN** ............................................................................ **45**
**12.1 <u>Modification of Plan</u>.** ................................................................................. **45**
**12.2 <u>Notices</u>.** ........................................................................................................ **46**

# INTRODUCTION

Debtor, Cargo Transportation Services, Inc. ("CTS" or the "Debtor") proposes the following amended plan of reorganization (as may be amended from time to time, and including all addenda, exhibits, schedules, and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (defined in Section 1.12 below).

For a discussion of the Debtor's history, businesses, operations, assets, and liabilities and for a summary and analysis of the Plan, reference should be made to the *Amended Disclosure Statement in Connection with Plan of Reorganization for Cargo Transportation Services, Inc.*, dated August 10, 2011 (the "Disclosure Statement"). The Debtor is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

# ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in interpreting the Plan.

1.1 "Administrative Convenience Claim" means any Allowed Unsecured Claim (a) that is in an amount of $1,000 or less or (b) Allowed in an amount greater than $1,000 but whose Holder elects to reduce such Allowed Unsecured Claim to be $1,000.

1.2 "Administrative Expense" means (a) any cost or expense of administration of the Reorganization Case under Sections 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the applicable Administrative Expense Claims Bar Date or other applicable deadline established by the Bankruptcy Court, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Post-Petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor-in-Possession in the ordinary course of their businesses, (iii) any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent Allowed by a Final Order of the Bankruptcy Court, (iv) any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court, (v) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Post-Petition, and (vi) compensation or reimbursement of expenses of Professionals awarded or

allowed pursuant to an Order of the Bankruptcy Court under Bankruptcy Code § 330(a) or § 331 (including any amounts held back pursuant to an Order of the Bankruptcy Court); and (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

1.3 "<u>Administrative Expense Carve-Out</u>" means the amount of Cash up to a maximum of $750,000 to be paid from the Effective Date Total Proceeds dedicated to the payment of Allowed Administrative Expense Claims including Professional Fee Claims.

1.4 "<u>Administrative Expense Claim</u>" means any Allowed Claim for the payment of any Administrative Expense that is unpaid as of the Effective Date.

1.5 "<u>Administrative Expense Claims Bar Date</u>" means the last day for filing an application or other Bankruptcy Court-approved pleading for an Administrative Expense Claim as ordered by the Bankruptcy Court.

1.6 "<u>Affiliate</u>" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.7 "<u>Allowed</u>" means and includes, with respect to any Claim or Equity Interest, (a) any Claim (other than a Disputed Claim) or Equity Interest, proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) or Equity Interest that is listed in the Schedules as liquidated in the amount and not disputed or not Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (2) the Claim or Equity Interest has been Allowed by a Final Order of the Bankruptcy Court (but only to the extent so Allowed).

1.8 "<u>Allowed Amount</u>" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order. No amount shall be Allowed for any Claim to the extent such amount (a) is for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court, or (b) represents any portion of an Allowed Claim that was paid during the Reorganization Case prior to the Effective Date.

1.9 "<u>Anniversary Date</u>" means the calendar date (or first business day thereafter) that falls one year after the Effective Date and the same calendar date (or first business day thereafter) of each succeeding calendar year.

1.10 "<u>Avoidance Action</u>" means a Cause of Action which any Debtor may assert under Section 541, 542, 543, 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

1.11    "Ballot" means the ballot accompanying the Disclosure Statement provided to each Holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan.

1.12    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 1101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.13    "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.14    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.15    "BBK" means BBK, Ltd., its officers, employees, and/or agents.

1.16    "Business Day" means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.17    "Carve-Outs" means, collectively, the Administrative Claims Carve-Out, the CV/IC Carve-Out, and the Unsecured Carve-Out as defined in the Plan.

1.18    "Cash" means lawful currency of the United States of America and its equivalents.

1.19    "Cash Collateral" shall have the meaning ascribed in Section 363(a) of the Bankruptcy Code.

1.20    "Cash Collateral Order" means one or more interim and/or final Orders of the Bankruptcy Court pursuant to which the Debtor was authorized to use Property that constitutes Cash Collateral.

1.21    "Causes of Action" means any and all of the Debtor's or the Estate's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity, or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.22    "Claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

1.23    "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 4 of the Plan.

1.24    "Class 6 Determination" means a contested matter or adversary proceeding whereby the Bankruptcy Court determines that any CV/IC Non-Performing Creditor whose CV/IC Claim is classified in Class 6 of this Plan (i) has or may have any applicable non-bankruptcy rights to pursue the Debtor's Customers directly, (ii) is precluded from exercising such rights by virtue of any service agreement between the Debtor and such Creditor, or (iii) is barred by the automatic stay, any injunction entered pursuant to Section 105 of the Bankruptcy Code or pursuant to the Confirmation Order, the discharge injunction from pursuing the Debtor's Customers directly or indirectly for collection of any CV/IC Claim or the CV/IC Injunction.

1.25    "Comdata Order" means the Bankruptcy Court's *Order Granting Debtor's Emergency Motion to Pay Comdata Network, Inc. d/b/a Comdata Corporation as a Critical Vendor*, docketed as Doc. No. 187, whereby the Debtor was authorized to pay a portion of Comdata's pre-petition claim in exchange for Comdata's provision of a post-petition credit line.

1.26    "Comerica" means Comerica Bank and all affiliates, predecessors, or successors.

1.27    "Comerica Base Receivable Proceeds" means the amount of $3,000,000 to be paid to Comerica from the Effective Date Receivable Net Proceeds.

1.28    "Comerica Claim" means any Claim of Comerica based on the Comerica Loan or Comerica Loan Documents to the extent such Claim is an Allowed Claim.

1.29    "Comerica Collateral" means any property or interest in property of the Debtor or the Estate that is subject to a Lien to secure payment of the Comerica Loan to the extent (a) such Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law and (b) such Lien continues in property of the Debtor acquired after the Petition Date as provided under Section 552(b)(2) of the Bankruptcy Code.

1.30    "Comerica Loan" means that certain pre-petition loan as evidenced by the Comerica Loan Documents.

1.31    "Comerica Loan Documents" means those documents including, without limitation, those certain documents evidencing the Comerica Loan including all promissory notes, security agreements, pledges, and other instruments and documents executed by the Debtor in favor of Comerica, including the Master Revolving Note dated May 17, 2010 as may be secured by the Debtor's accounts receivable, inventory, equipment, and fixtures.

1.32    "Comerica Secured Claim" means that portion of the Allowed Comerica Claim that is a Secured Claim.

1.33    "Committee" means the Official Committee of Unsecured Creditors.

1.34    "Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.35   "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

1.36   "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of the Plan.

1.37   "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.38   "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.39   "Creditor" shall have the meaning ascribed to such term in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against Property of the Debtor as set forth in Section 102(2) of the Bankruptcy Code.

1.40   "Critical Vendor" means those shippers, carriers, or independent contractors asserting pre-petition claims against the Debtor whose continued post-petition services were considered to be essential to the Debtor's continued business operations and reorganization.

1.41   "CTS Comerica Claim" means any claim or cause of action that the Debtor has or may have against Comerica whether asserted as an affirmative Claim, counterclaim, defense, objection to Claim, or other right to affirmative relief, offset, or defense in any court of competent jurisdiction.

1.42   "Customers" means any shipper, consignee, consignor, or other customer who engaged or contracted with the Debtor for the transportation of freight by any means, including through the use of other carriers, and independent contractors.

1.43   "CV/IC Agreement" means a post-petition settlement or agreement executed by the Debtor and any Critical Vendor pursuant to CV/IC Orders providing for the post-petition payment of some or all of such CV/IC Creditor's pre-petition Claim under the terms and conditions established under such CV/IC Agreement.

1.44   "CV/IC Carve-Out" means the amount of $800,000 to be paid from the Effective Date Cash and Effective Date Receivable Net Proceeds to be used to pay Allowed Class 5 CV/IC Claims.

1.45   "CV/IC Claim" means any unpaid portion of the pre-petition Claim of any CV/IC Creditor that remains unpaid as of the Effective Date.

1.46   "CV/IC Clawback Recovery" means the recovery of any amount paid by the Debtor, pursuant to any CV/IC Order, to the extent the recipient of such payment failed to comply with the terms of any CV/IC Agreement or CV/IC Order by failing to provide the Debtor

with post-petition credit and services as contemplated by such CV/IC Agreement or CV/IC Order or by pursuing any collection action or demand against the Debtor's Customers.

1.47    "CV/IC Creditors" means those  pre-petition creditors of the Debtor who (i) have been designated or treated as Critical Vendors who have received payment of all or a portion of the pre-petition claim asserted against the Debtor pursuant to the CV/IC Orders or (ii) have asserted or may assert any independent right or ability under contract, tariff, or other applicable non-bankruptcy law to pursue any of the Debtor's current Customers, shippers, and/or consignees for the collection of any pre-petition claims that could be asserted by the Debtor or the Estate and/or claims that have or could be asserted by such Creditor against the Debtor or its Estate, or (iii) who have been identified in any motion, Order, complaint, or other paper filed or entered in the Reorganization Case seeking a determination that the automatic stay imposed under Section 362 of the Bankruptcy Code or any injunction entered pursuant to Section 105 of the Bankruptcy Code would preclude or prohibit collection action against any Customer, shipper, or consignee of the Debtor for any pre-petition claim that could be asserted by the Debtor or the Estate or by such CV/IC Creditor against the Debtor or the Estate.

1.48    "CV/IC Injunction" means the injunction described in Sections 4.6.2 and 6.3 of this Plan.

1.49    "CV/IC Non-Performing Creditors" means those CV/IC Creditors, their agents, assigns, or anyone acting at their direction or on their behalf who have asserted or may assert any independent right or ability under contract, tariff, or other applicable non-bankruptcy law to pursue any of the Debtor's Customers, shippers, and/or consignees for the collection of any pre-petition claims that could be asserted by the Debtor or the Estate and/or claims that have or could be asserted by such Creditor against the Debtor or its Estate, and who (i) have not entered into a CV/IC Agreement or (ii) have failed to perform under the terms of a CV/IC Agreement or (iii) have not obtained a CV/IC Settlement Order with respect to any CV/IC Claim, or (iv) have not otherwise agreed to waive and forbear from all collection efforts against the Debtor's Customers.

1.50    "CV/IC Performing Creditors" means those CV/IC Creditors (i) whose continued provision of services are considered critical to the successful reorganization of the Debtor and to the collection of the Effective Date Receivable Assets; (ii) who have executed a CV/IC Agreement in compliance with the CV/IC Orders, (iii) who have continued and will continue to provide the Debtor with services and/or goods under the terms of any CV/IC Agreement or pursuant to a CV/IC Settlement Order, and (iv) who do not take any action to pursue or collect against any Customers.

1.51    "CV/IC Orders" means those interim and final orders entered by the Bankruptcy Court granting the *Debtor's Emergency Motion to Pay Prepetition Claims of Critical Vendors* (Doc. No. 14) and *Debtor's Emergency Motion for Authorization to Pay Prepetition Claims of Independent Contractors* (Doc. No. 28), including, without limitation the *Final Order Granting (1) Debtor's Emergency for Authorization to Pay Prepetition Claims of Critical Vendors and (2)*

1.52    "<u>CV/IC Release</u>" means the release from any liability for recovery of any Avoidance Action that could be asserted pursuant to Sections 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code that shall be effective as to any CV/IC Creditor classified in Class 5 or who elects treatment in Class 4 of this Plan, and who agrees and accepts the treatment provided to such classes under the Plan.

1.53    "<u>CV/IC Settlement Order</u>" means any Order of the Bankruptcy Court, other than the CV/IC Orders, approving a compromise, settlement, or specific terms relating to the payment of the CV/IC Claim of a CV/IC Creditor.

1.54    "<u>Debtor-In-Possession</u>" means the Debtor in its capacity as provided under Section 1101(1) of the Bankruptcy Code, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.55    "<u>Debtor</u>" means Cargo Transportation Services, Inc.

1.56    "<u>Determination Motion</u>" means a motion filed by a Class 6 CV/IC Creditor or any party otherwise subject to the CV/IC Injunction seeking a determination from the Bankruptcy Court as to whether the Creditor has any rights to collect against the Debtor's Customers directly.  The Determination Motion shall identify the specific relief sought, and shall (i) identify the Customers the Creditor seeks to collect from and (ii) provide documentation to support such request, including any contract for carriage or freight transport between the CV/IC Creditor and the Debtor, any contract between the CV/IC Creditor and the Customer, and all Bills of Lading, account statements, invoices that support the assertion of liability by the Debtor's Customers to such CV/IC Creditor.

1.57    "<u>DIP Financing</u>" shall mean any agreement, document, loan, or other arrangement approved by the Bankruptcy Court, by which the Debtor may have obtained post-petition financing pursuant to Section 364 of the Bankruptcy Code, and any related loan or security documents.

1.58    "<u>DIP Financing Claim</u>" shall mean any Claim existing under any DIP Financing to the extent such DIP Financing remains payable and outstanding as of the Effective Date.

1.59    "<u>Disclosure Statement</u>" means the amended disclosure statement (including all annexes, exhibits, and schedules attached thereto or referenced therein), as such disclosure statement may be amended or modified from time to time for Plan approval, whether conditional or final, by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.60    "<u>Disclosure Statement Hearing Order</u>" means one or more Orders of the Bankruptcy Court conditionally (and/or finally) approving the Disclosure Statement as containing "adequate information," as being otherwise in accordance with Section 1125 of the

Bankruptcy Code, and scheduling such deadlines, hearings, and addressing other matters as the Bankruptcy Court may deem appropriate.

1.61 "Disputed Claim" means a Claim that has not been Allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court, or (3) granted in whole or part by a Final Order of the Bankruptcy Court, and a Claim shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if (A) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent, or unliquidated or (B) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.62 "Disputed Unsecured Claims Reserve" shall mean the reserve of Cash to be established on and maintained by the Plan Trustee on any Distribution Date in an amount sufficient to satisfy payments on account of any Disputed Claims classified and treated in Class 6 or Class 7 of the Plan that have not been withdrawn or determined as of the Effective Date, and subsequently any Distribution Date.

1.63 "Distribution" means the Distribution in accordance with this Plan of Cash or other Property, as the case may be.

1.64 "Distribution Date," means, as context requires, the date (a) for payments to be made on the Effective Date or (b) such other dates upon which Distributions of Property are to occur under the Plan.

1.65 "District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.66 "Effective Date" means, and shall occur on, the first (1st) Business Day that is fifteen (15) days following the entry of the Confirmation Order and upon which all of the conditions to occurrence of the Effective Date contained in Section 9.2 of the Plan have been satisfied or waived by the Debtor.

1.67 "Effective Date Cash" means the Debtor's Cash as of the Effective Date calculated based on a book balance net of outstanding checks and other items in transit as of the Effective Date.

1.68 "Effective Date Cash Assets" means the Debtor's transferable Cash equivalent assets in the form of any bond collateral, tenant security deposits, utility deposits, and prepaid expenses as of the Effective Date.

1.69    "Effective Date Fixed Assets" means the Debtor's computer equipment, office equipment, furniture, and other fixed assets not subject to Liens in favor of any Class 3 Secured Creditor.

1.70    "Effective Date Receivable Assets" means the Debtor's gross billed accounts receivable and gross unbilled work in progress as of the Effective Date.

1.71    "Effective Date Receivable Proceeds" means the Cash collections of the Effective Date Receivable Assets.

1.72    "Effective Date Receivable Net Proceeds" means the Effective Date Receivable Proceeds after payment of OCB Accounts Payable and OCB Accrued Expenses.

1.73    "Effective Date Total Proceeds" means the Effective Date Cash plus Effective Date Receivable Net Proceeds.

1.74    "Entity" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.75    "Equity Interest(s)" means any existing Equity Interest in the Debtor as of the Confirmation Date whether denominated as stock, options, warrants, or other evidence of ownership in the Debtor.

1.76    "Estate" means the estate created pursuant to Section 541 of the Bankruptcy Code.

1.77    "Estimated Claim Amount" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim or Administrative Expense against the Debtor which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Section 1129(b)(1) and (2) of the Bankruptcy Code.

1.78    "Estimation Order" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Claim Amount of a Claim or Administrative Expense against the Debtor.

1.79    "Excess Effective Date Proceeds" means the Effective Date Total Proceeds less (i) the Administrative Expense Carve-Out; (ii) the CV/IC Carve-Out, (iii) the Unsecured Carve-Out; and (iv) the Comerica Base Receivable Proceeds.

1.80    "Exit Funder" means the corporate entity to be formed on or immediately prior to the Effective Date that shall own all of the New Stock or other ownership interests in the Reorganized Debtor as of the Effective Date.

1.81    "Exit Funding" means Cash in the amount of $2,000,000 to be provided by the Exit Funder to the Reorganized Debtor to acquire New Stock of the Reorganized Debtor and to provide working capital for the operations of the Reorganized Debtor after the Effective Date.

1.82    "Final Order" means an Order, the implementation, operation, or effect of which has not been stayed and as to which Order (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.83    "Financial Projections" means those pro forma financial projections attached as **Exhibit "C"** to the Amended Disclosure Statement, as may be supplemented, amended, or modified prior to or at the Confirmation Hearing.

1.84    "Governmental Unit" means any foreign, provincial, federal, state, local, or municipal (a) government, (b) governmental agency, (c) governmental commissions, (d) governmental department, (e) governmental bureau, (f) governmental ministry, and/or (g) governmental entity.

1.85    "Holder" means an Entity holding a Claim or Equity Interest.

1.86    "Impaired" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.87    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

1.88    "New Stock" means all of the new Equity Interests in the Reorganized Debtor to be issued to the Exit Funder under the Plan as of the Effective Date.

1.89    "OCB Accounts Payable" means all accrued but unpaid trade payables representing post-petition obligations for invoiceable goods and services provided to the Debtor and reflected in the Debtor's accounting system as trade payables as of the Effective Date.

1.90    "OCB Accrued Expenses" means all operating expenses incurred by the Debtor in the ordinary course of business, other than the OCB Accounts Payable, that remain unpaid as of the Effective Date including, but not limited to, carrier accruals, local cartage, equipment rentals, customer rebates, payroll, payroll taxes, employee benefits, rents, utilities, and like expenses.

1.91    "Order" means an order or judgment of a court.

1.92    "OTSC Injunction" means the injunction arising out of the application of the automatic stay to prohibit collection actions against the Debtor's Customers as provided in the OTSC Orders and any subsequent Order, or preliminary or permanent injunction of the Bankruptcy Court providing similar relief entered during the Reorganization Case.

1.93 "OTSC Motions" means the *Debtor's Emergency Motion for an Order: (1) to Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) to Enforce Automatic Stay* (Doc. No. 67), *Debtor's Supplemental Emergency Motion for an Order: (1) to Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) to Enforce Automatic Stay* (Doc. No. 89), *Motion for Order to Show Cause why the Mason-Dixon Lines, Inc., Universal Am-Can, Ltd, and Universal Truckload Services, Inc., Should not be Held in Contempt or Subject to Sanctions for Violation of the Supplemental OTSC Order* (Doc. No. 564), and any similar motion, complaint, or request made by the Debtor seeking a determination that the automatic stay imposed under Section 362 of the Bankruptcy Code or the entry of an injunction pursuant to Section 105 of the Bankruptcy Code, that would preclude, prohibit, and enjoin any action by a CV/IC Creditor to pursue and/or collect from any Customer, shipper, or consignee of the Debtor for any pre-petition claim that could be asserted by the Debtor or the Estate or by such Creditor against the Debtor or the Estate.

1.94 "OTSC Orders" means the interim and final orders of the Bankruptcy Court entered as Doc. Nos. 121 and 141 in connection with the *Debtor's Emergency Motion for an Order: (1) to Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) to Enforce Automatic Stay* (Doc. No. 67), *Debtor's Supplemental Emergency Motion for an Order: (1) to Show Cause Why Certain Independent Contractors Should Not Be Held in Contempt for Violation of the Automatic Stay; and (2) to Enforce Automatic Stay* (Doc. No. 89), and any subsequent or additional Orders determining that the automatic stay imposed under Section 362 of the Bankruptcy Code applies to or acts as an injunction against any collection action against the Debtor's Customers to collect any debt or Claim that may be asserted against the Debtor or its Estate.

1.95 "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.96 "Petition Date" means January 12, 2011.

1.97 "Plan" means this Amended Chapter 11 Plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.98 "Plan Documents" means any documents, attachments, and exhibits, as the same may be amended, modified, or supplemented from time to time that aid in effectuating the Plan, which documents, attachments, and exhibits that may be filed by the Debtor with the Bankruptcy Court.

1.99 "Plan Supplement" means a supplement to the Plan containing such additional Plan Documents that may become available, any documents reflecting the terms of any Exit

Funding and any Subscription Agreement or other documents reflecting the terms and conditions relating to any Exit Capital Contribution.

1.100 "Plan Trust" means the Plan Trust established for the benefit of the Holders of Allowed Claims pursuant to and with the powers set forth in the Plan Trust Agreement.

1.101 "Plan Trust Agreement" means the agreement specifying the rights and obligations of the Plan Trust and the Plan Trustee, as of the Effective Date, which agreement shall be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing.

1.102 "Plan Trust Assets" means the Assets to be conveyed to the Plan Trust within 60 days of the Effective Date as described in Section 5.13.2 of the Plan.

1.103 "Plan Trust Expenses" means all reasonable and necessary costs, taxes, and expenses of or imposed on or incurred by the Plan Trust, including insurance premiums, legal, accounting, and other professional fees and expenses, post-Effective Date fees of the United States Trustee for all disbursements made by the Plan Trust, overhead, and costs and expenses relating to the objection to and resolution of Claims, the prosecution of the Plan Trust Actions, and the performance of other duties described in the Plan Trust Agreement.

1.104 "Plan Trustee" means the Plan Trustee appointed by the Bankruptcy Court upon Confirmation to administer the Plan Trust.

1.105 "Priority Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.106 "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.107 "Professional Fee Claim" means Allowed Claims for reasonable fees and out-of-pocket expenses of professional retained in the Reorganization Case with the approval of the Bankruptcy Court, including counsel for the Debtor, as debtor-in-possession, the Committee, the Debtor's financial advisor(s), and any other Person or Entity whose employment has been approved by the Bankruptcy Court pursuant to Sections 327 or 1103 of the Bankruptcy Code.

1.108 "Pro Rata" or "Pro Rata Share" means the same proportion or ratio that an Allowed Claim in a particular Class bears to the total amount of all Allowed Claims in such Class or Classes as provided under the Plan.

1.109 "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001 or 3002.

1.110 "Property" means "property of the estate" as set forth in Section 541 of the Bankruptcy Code.

1.111 "Released Action" means any Cause of Action or Avoidance Action that has been or is to be released or discharged through (i) the Confirmation Order pursuant to this Plan, (ii) pursuant to entry of an Order by the Bankruptcy Court approving a compromise of controversy pursuant to Rule 9019 of the Bankruptcy Code prior to the Effective Date, or (iii) pursuant to any CV/IC Settlement Order.

1.112 "**RELEASEES**" means Comerica and the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors, and professionals of Comerica and their respective predecessors, successors, and assigns.

1.113 "Reorganization Case" or "Bankruptcy Case" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

1.114 "Reorganized Debtor" or "Reorganized CTS" means the Debtor as of and following the Effective Date.

1.115 "Schedules" means the Schedules, Statements of Financial Affairs, and any attached list filed by the Debtor with the Bankruptcy Court in the Reorganization Case pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.116 "Section 503(b)(9) Claim" means any timely filed and Allowed Administrative Expense Claim for the unpaid value of any goods (but not for the value of any services) actually received by the Debtor within twenty (20) days prior to the Petition Date if sold to the Debtor in the ordinary course of business of the Debtor.

1.117 "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the Property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.118 "Setoff" means any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the corresponding Debtor to offset a mutual debt owing by a Debtor to a Creditor against a Claim of that Debtor, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

1.119 "Shareholder Note" means that promissory note dated March 5, 2009 in the principal amount of $955,988 payable to the Debtor by Stacy Bell and pledged to Comerica and any underlying indebtedness evidenced by such note.

1.120 "Unimpaired" means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.121 "Unsecured Carve-Out" means the amount of $500,000 to be paid from the Effective Date Cash and Effective Date Receivable Net Proceeds to fund the Distributions to be made to the Holders of Class 6 and Class 7 Unsecured Claims under the Plan.

1.122 "Unsecured Claim" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to: (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.123 "UST Fees" means any fees or charges assessed against the Debtor's Estate under Section 1930, Chapter 12 of Title 28 of the United States Code.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1 <u>Administrative Expense Claims</u>.

Administrative Expense Claims shall include, among other amounts entitled to administrative status under Section 503, (i) the costs and expenses incurred in the operation of the business of the Debtor, including OCB Administrative Claims, (ii) Professional Fee Claims, and (iii) Administrative Expense Claims Allowed under Section 503(b)(3)(F).

(1) Except as provided below, each Holder of an Administrative Expense Claim shall, in full and final satisfaction of such Allowed Administrative Expense Claim, be paid on the later to occur of (a) the Effective Date or (b) the date on which an Administrative Expense Claim shall become an Allowed Claim: (i) in full, in Cash from the Administrative Expense Carve-Out, the Allowed Amount of such Allowed Administrative Expense Claim, or (ii) in such other amount and on such other terms and conditions as may be agreed between the Holder of such Administrative Expense Claim and the Debtor.

(2) Any timely filed and Allowed Section 503(b)(9) Claim shall be paid (i) in full, in Cash from the Administrative Expense Carve-Out, or (ii) in such other amounts and such other terms and conditions as may be agreed between the Holder of such 503(b)(9) Claim and the Debtor provided that (a) an application for allowance of such 503(b)(9) Claim shall have been filed by the deadline established by the Bankruptcy Court for the filing of Applications of Allowance of Administrative Expense Claims, (b) the amount asserted as a Section 503(b)(9) Claim has not been otherwise paid prior to the Effective Date, and (c) any amounts paid on account of an Allowed 503(b)(9) Claim shall reduce

the Allowed Amount of any Unsecured Claim asserted by the Holder of the 503(b)(9) Claim.

(3)     Unpaid OCB Accounts Payable and Unpaid OCB Accrued Expenses as of the Effective Date shall be paid from the Effective Date Receivable Proceeds.

Administrative Expense Claims are not classified and are to be treated in accordance with the Bankruptcy Code and the Holders of Administrative Expense Claims are not entitled to vote on the Plan.

2.2     <u>DIP Financing Claims</u>.

2.2.1   Any DIP Financing Claims have been or shall be paid on the Effective Date or as may be otherwise agreed between the Holders of the DIP Financing Claim.

2.3     <u>Priority Tax Claims</u>.

2.3.1   Priority Tax Claims are Claims of Governmental Units for taxes that are not Secured Claims and are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.3.2   Allowed Priority Tax Claims will be paid in full, in Cash, the later of: (a) the Effective Date; (b) the date of the Order allowing such Claim; or (c) the date that such Allowed Priority Tax Claim would have been due if the Reorganization Case had not been commenced; provided, however, that the Debtor may, at its option, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, make deferred Cash payments with the principal amount of such Allowed Priority Tax Claims amortized and payable in equal annual installments over five (5) years from the Order of relief, and in such case interest shall accrue on the unpaid balance commencing on the Effective Date.

2.3.3   Priority Tax Claims are not classified, are to be treated as required by the Bankruptcy Code, and the Holders of such Claims are not entitled to vote on the Plan.

# ARTICLE 3
# CLASSIFICATION OF CLAIMS AND INTERESTS

Claims other than Allowed Administrative Expense Claims and Allowed Priority Tax Claims are classified for all purposes pursuant to this Plan as follows:

3.1    <u>Class 1 – Unsecured Priority Claims</u>.

Class 1 consists of all Priority Claims against the Debtor, which are entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

3.2    <u>Class 2 – Comerica Secured Claim</u>.

Class 2 consists of the portion of the Allowed Claim of Comerica that is a Secured Claim secured by a valid, perfected, and unavoidable Lien on the Comerica Collateral.

3.3    <u>Class 3 – Other Secured Claims</u>.

This Class consists of other creditors who have or may assert Secured Claims against the Debtor secured by Liens in Property of the Debtor or the Estate, including those parties to financing transactions that may be denominated as leases and are sub-classified as follows:

3.3.1    Class 3(A) consists of any Allowed Secured Claim(s) of Ally Financial to the extent secured by a valid and perfected Lien in a certain vehicles. These transactions will be treated as true leases and will be treated under Article 7 of the Plan.

3.3.2    Class 3(B) consists of any Allowed Secured Claim of BMW Bank of North America, Inc. to the extent secured by a valid and perfected Lien in a vehicle. This transaction will be treated as a true lease and will be treated under Article 7 of the Plan.

3.3.3    Class 3(C) consists of the Allowed Secured Claim of Credential Leasing Corp. of Florida, Inc. to the extent secured by a valid and perfected Lien in office furniture.

3.3.4    Class 3(D) consists of the Allowed Secured Claim(s) of General Electric Capital Corp. to the extent secured by a valid and perfected Lien in certain trailers.

3.3.5    Class 3(E) consists of the Allowed Secured Claim of Key Equipment Finance, Inc. to the extent secured by a valid and perfected Lien in certain tractors.

3.3.6    Class 3(F) consists of the Allowed Secured Claim(s) of Mercedes-Benz Financial Services USA LLC to the extent secured by a valid and perfected Lien in tractors and vehicles. The Claim(s) in connection with the vehicles will be treated as true leases and will be treated under Article 7 of the Plan.

3.3.7    Class 3(G) consists of the Allowed Secured Claim of U.S. Bancorp Equipment Finance, Inc. to the extent secured by a valid and perfected Lien in certain office equipment.

3.3.8    Class 3(H) consists of the Allowed Secured Claim of Toyota Motor Credit Corporation to the extent secured by a valid and perfected Lien in certain forklifts.

3.3.9    Class 3(I) consists of the Allowed Secured Claim of Wells Fargo Financial Leasing to the extent secured by a valid and perfected Lien in certain forklifts.

3.3.10    Class 3(J) consists of the Allowed Secured Claim(s) of Wells Fargo Equipment Finance, Inc. to the extent secured by a valid and perfected Lien in certain trailers.

3.3.11    Class 3(K) consists of the Allowed Secured Claim of First Insurance Funding Corp. to the extent secured by a valid and perfected Lien in unearned premiums pursuant to certain commercial premium financing agreements.

3.3.12    Class 3(L) consists of the Allowed Secured Claims of CoActive to the extent secured by a valid and perfected Lien in the Debtor's telephone system.

3.3.13    Class 3(M) consists of the Allowed Secured Claims of Transport International Pool, Inc. to the extent secured by a valid and perfected Lien in certain trailers.

3.4    <u>Class 4 – Administrative Convenience Claims</u>.

Class 4 consists of (i) Administrative Convenience Claims and (ii) Allowed CV/IC Claims in the amount of $1,000 or less or Allowed CV/IC Claims whose Holders elect to reduce such Allowed CV/IC Claim to the amount of $1,000, to the extent that the Holder of any Allowed CV/IC Claim included in Class 4 also affirmatively agrees to accept the Distribution provided to the Holders of Allowed Class 4 Claims in full satisfaction of any and all Claims against the Debtor and/or the Debtor's Customers for the underlying freight services provided <u>and</u> agrees to be bound by the CV/IC Injunction.

3.5    <u>Class 5 - Performing CV/IC Claims</u>.

Class 5 consists of Allowed CV/IC Claims of CV/IC Performing Creditors whose continued provision of services after the Effective Date are considered by the Debtor to be critical to the successful reorganization of the Debtor and implementation of this Plan and who have continued and will continue to provide the Debtor with services pursuant to any CV/IC Agreement or CV/IC Settlement Order including (i) the CV/IC Claims of Estes and Old Dominion pursuant to the CV/IC Settlement Orders, (ii) the unpaid portion of the Allowed CV/IC Claim of any other CV/IC Creditor who obtains a CV/IC Settlement Order prior to the Effective Date or as part of the Confirmation Order, and (iii) the Allowed CV/IC Claims of any CV/IC Performing Creditor that remains unpaid as of the Effective Date and has not been the subject of a CV/IC Settlement Order.

3.6     Class 6 - Non-Performing CV/IC Claims.

Class 6 consists of the Allowed Unsecured Claims of CV/IC Non-Performing Creditors.

3.7     Class 7 – General Unsecured Claims.

Class 7 consists of all Unsecured Claims not otherwise separately classified.

3.8     Class 8 – Unsecured Intercompany Claims.

Class 8 consists of any Unsecured intercompany claims between the Debtor and affiliated corporations.

3.9     Class 9 – Equity Interests.

Class 9 shall consist of all existing Equity Interests in the Debtor.

3.10    Extent of Classification.

A Claim is placed in a particular Class only to the extent such Claim falls within the description of that Class and only to the extent and amount that such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date. A Claim may be, and is, classified in other Classes to the extent any portion of the Claim falls within the description of such other Classes. Prior to the voting deadline established by Order of the Bankruptcy Court, the Debtor may seek an Order determining the foregoing classifications of Creditors and Equity Interests pursuant to Rule 3013 of the Bankruptcy Rules. No portion of an Allowed Unsecured Claim that is included in Class 5 shall be Allowed or paid as a Class 7 General Unsecured Claim.

## ARTICLE 4
## TREATMENT OF ALLOWED CLAIMS AND INTERESTS

The following treatment of Allowed Claims and Equity Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of such respective Claims and Equity Interests.

4.1     Class 1 – Priority Claims

    4.1.1   **Treatment.**

        Except as otherwise provided below, each Holder of an Allowed Priority Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge thereof, Cash in the amount of such Allowed Priority Claim on the later of: (i) the Effective Date or as soon thereafter as practical; or (ii) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Claim (or any other date specified in such Final Order) or as soon thereafter as practical.

### 4.1.2 **Impairment and Voting.**

Priority Claims are Unimpaired. The Holders of such Claims are not entitled to vote on the Plan.

### 4.2 Class 2 – Comerica Secured Claim

#### 4.2.1 **Treatment.**

The entire Allowed Amount of Comerica's Claim shall be treated as an Allowed Secured Claim. The Allowed Amount of Comerica's Secured Claim shall be (a) as stipulated between the Debtor and Comerica or (b) as determined by the Bankruptcy Court, pursuant to Section 506(a) of the Bankruptcy Code and shall include any amounts the Bankruptcy Court determines should be allowed pursuant to Section 506(b) of the Bankruptcy Code for interest, reasonable fees, costs, or charges that may be provided for under the Comerica Loan Documents. On account of and in full satisfaction of the Comerica Secured Claim, Comerica shall receive the following:

 (i) the Comerica Base Receivable Proceeds within 60 days of the Effective Date;

 (ii) a Cash payment from the Reorganized Debtor in the amount of $125,000 within 30 days of the Effective Date in satisfaction of Comerica's Lien on the Effective Date Cash Assets;

 (iii) a Cash payment from the Reorganized Debtor in the amount of $100,000, less any amounts paid to Secured Creditors holding senior Liens on the Effective Date Fixed Assets, in full satisfaction of Comerica's Lien on the Effective Date Fixed Assets;

 (iv) all of the Debtor's rights and interest under the Shareholder Note which shall be contemporaneously conveyed by Comerica to the Exit Funder in exchange for a Cash payment of $25,000;

 (v) any of the Debtor's rights in other miscellaneous loans and advances or other assets not otherwise specifically defined in this Plan; and

 (vi) Forty percent (40%) of the Excess Effective Date Proceeds.

#### 4.2.2 **Reporting**.

From the Effective Date until the Comerica Base Receivable Proceeds are paid in full, the Reorganized Debtor shall provide to Comerica a weekly report showing all funds received and cash expenses paid during the prior week in a form and substance substantially similar to what has been provided to Comerica during the pendency of this

Case and such additional reporting as may be agreed between the Debtor and Comerica prior to the Confirmation Date or specified in the Plan Supplement.

### 4.2.3 **Liens**.

Subject to the Carve-Outs, Comerica shall retain any Liens(s) on the Comerica Collateral until the Comerica Base Receivable Proceeds and the Cash payments provided in subparagraphs (ii) and (iii) of Section 4.2.1 of this Plan are paid.

### 4.2.4 **Release**.

Upon receipt of the Comerica Base Receivable Proceeds and the Cash payments provided in subparagraphs (ii) and (iii) of Section 4.2.1 of this Plan, Comerica will release (i) any Lien on the Comerica Collateral, and (ii) any Guarantor of the Comerica Loan from any liability in connection with the Comerica Loan.

### 4.2.5 **Impairment and Voting**.

Class 2 is Impaired under the Plan and the Holder of the Comerica Claim is entitled to vote to accept or reject the Plan.

## 4.3 Class 3 – Other Secured Claims

### 4.3.1 **Treatment**.

Class 3(A) - Ally Financial ("Ally") - The Claim(s) of Ally arising from leases of vehicles shall be treated in accordance with Article 7, or as otherwise agreed by Ally and the Debtor or ordered by the Court.

Class 3(B) - BMW Bank of North America, Inc. ("BMW") - The Claim(s) of BMW arising from leases of vehicles shall be treated in accordance with Article 7, or as otherwise agreed by BMW and the Debtor or ordered by the Court.

Class 3(C) - Credential Leasing Corp. of Florida, Inc. ("Credential") - The Allowed Class 3(C) Secured Claim of Credential shall be paid through monthly payments (a) deferred monthly payments that in the aggregate equal to the lesser of (i) the value of the Property securing such Allowed Claim (less any amounts paid as adequate protection prior to the Effective Date) as determined by the Bankruptcy Court in full satisfaction of such Allowed Class 3 Secured Claim or (ii) the amount of the Allowed Class 3 Secured Claim (less any amounts paid as adequate protection prior to the Effective Date) or (b) shall receive monthly payments as provided under the relevant financing agreement provide that any arrearage shall be paid in equal monthly payments in the same amount as the regular monthly payment due under the relevant financing agreement following the expiration of the stated lease or financing term until such arrearage is paid in full.

Class 3(D) - General Electric Capital Corp. ("GECC") - The collateral securing the Allowed Class 3(D) Secured Claim(s) of GECC shall be surrendered in full satisfaction of all Allowed Claim(s) of GECC.

Class 3(E) - Key Equipment Finance, Inc. ("Key") – Key shall have an Allowed Class 3(E) Secured Claim in the amount of $93,976.64.  Upon Confirmation, the balance of the Allowed Class 3(E) Secured Claim (less any amounts paid as adequate protection) shall accrue interest at the rate of 5.25% and shall be paid in eighteen (18) equal monthly installments with the first installment being due within fifteen (15) days of Confirmation and continuing on the fifteenth day of each subsequent month.

Class 3(F) - Mercedes-Benz Financial Services USA LLC ("Mercedes") - The Allowed Class 3(F) Secured Claim(s) of Mercedes secured by the trailers shall be paid through (a) deferred monthly payments that in the aggregate equal to the lesser of (i) the value of the Property securing such Allowed Claim(s) (less any amounts paid as adequate protection prior to the Effective Date) as determined by the Bankruptcy Court in full satisfaction of such Allowed Class 3 Secured Claim(s) or (ii) the amount of the Allowed Class 3 Secured Claim(s) (less any amounts paid as adequate protection prior to the Effective Date) or (b) shall receive monthly payments as provided under the relevant financing agreement provide that any arrearage shall be paid in equal monthly payments in the same amount as the regular monthly payment due under the relevant financing agreement following the expiration of the stated lease or financing term until such arrearage is paid in full.   The Claim(s) of Mercedes arising from leases of vehicles shall be treated in accordance with Article 7, or as otherwise agreed by Mercedes and the Debtor or ordered by the Court.

Class 3(G) - U.S. Bancorp Equipment Finance, Inc. ("USB") - The Allowed Class 3(G) Secured Claim of USB shall be paid through (a) deferred monthly payments that in the aggregate equal to the lesser of (i) the value of the Property securing such Allowed Claim (less any amounts paid as adequate protection prior to the Effective Date) as determined by the Bankruptcy Court in full satisfaction of such Allowed Class 3 Secured Claim or (ii) the amount of the Allowed Class 3 Secured Claim (less any amounts paid as adequate protection prior to the Effective Date) or (b) shall receive monthly payments as provided under the relevant financing agreement provide that any arrearage shall be paid in equal monthly payments in the same amount as the regular monthly payment due under the relevant financing agreement following the expiration of the stated lease or financing term until such arrearage is paid in full.

Class 3(H) - Toyota Motor Credit Corporation ("Toyota") - The Allowed Class 3(H) Secured Claim of Toyota shall be paid through (a) deferred monthly payments that in the aggregate equal to the lesser of (i) the value of the Property securing such Allowed Claim (less any amounts paid as adequate protection prior to the Effective Date) as determined by the Bankruptcy Court in full satisfaction of such Allowed Class 3 Secured Claim or (ii) the amount of the Allowed Class 3 Secured Claim (less any amounts paid as

adequate protection prior to the Effective Date) or (b) shall receive monthly payments as provided under the relevant financing agreement provide that any arrearage shall be paid in equal monthly payments in the same amount as the regular monthly payment due under the relevant financing agreement following the expiration of the stated lease or financing term until such arrearage is paid in full.

Class 3(I) - Wells Fargo Financial Leasing ("WFFL") - The Allowed Class 3(I) Secured Claim of WFFL shall be paid through (a) deferred monthly payments that in the aggregate equal to the lesser of (i) the value of the Property securing such Allowed Claim (less any amounts paid as adequate protection prior to the Effective Date) as determined by the Bankruptcy Court in full satisfaction of such Allowed Class 3 Secured Claim or (ii) the amount of the Allowed Class 3 Secured Claim (less any amounts paid as adequate protection prior to the Effective Date) or (b) shall receive monthly payments as provided under the relevant financing agreement provide that any arrearage shall be paid in equal monthly payments in the same amount as the regular monthly payment due under the relevant financing agreement following the expiration of the stated lease or financing term until such arrearage is paid in full.

Class 3(J) - Wells Fargo Equipment Finance, Inc. ("Wells") – Wells shall have an Allowed Class 3(J) Secured Claim in the amount of $1,076,379.50, which shall accrue interest at the rate of 5.5%. The Allowed Class 3(J) Secured Claim shall be paid as follows:

      (i)      All adequate protection payments shall be applied to reduce the number of payments due under the treatments described below;

      (ii)      TRAILER LEASE NUMBER 144207/101: The Debtor shall make thirty-six (36) consecutive monthly payments of $3,550.00 due on the 1st day of each month commencing on August 1, 2011, and a balloon payment of $32,491.96 due on August 1, 2014;

      (iii)      TRAILER LEASE NUMBER 144207/102: The Debtor shall make forty-two (42) consecutive monthly payments of $4,200.00 due on the 1st day of each month commencing on August 1, 2011, and a balloon payment of $18,103.70 due on February 1, 2015;

      (iv)      TRAILER LEASE NUMBER 144207/103: The Debtor shall make forty-eight (48) consecutive monthly payments of $13,000.00 due on the 1st day of each month commencing on August 1, 2011 and a balloon payment of $51,317.40 due on August 1, 2015; and

      (v)      COMBINATION LOAN AND SECURITY AGREEMENT 701: The Debtor shall make thirty-six (36) consecutive monthly payments of $3,500.00

due on the 1st day of each month commencing on August 1, 2011 and a balloon payment of $61,089.26 due on August 1, 2014.

Class 3(K) - First Insurance Funding Corp. ("FIFC") - The Allowed Class 3(K) Secured Claim of FIFC shall be paid through monthly payments pursuant to the terms of the existing premium financing agreement, and FIFC shall retain its lien in the unearned insurance premiums.

Class 3(L) - CoActive Capital Partners, Inc. ("CoActive") - The collateral securing the Allowed Class 3(L) Secured Claim(s) of CoActive shall be surrendered in full satisfaction of all Allowed Claim(s) of CoActive or, alternatively, at the election of CoActive may be purchased by the Exit Funder for $20,000 in full satisfaction of all Allowed Claims of CoActive.

Class 3(M) - Transport International Pool, Inc. ("TIP") - The collateral securing the Allowed Class 3(M) Secured Claim(s) of TIP shall be surrendered in full satisfaction of all Allowed Claim(s) of TIP.

### 4.3.2 **Impairment and Voting**.

The Claims classified in Classes 3(A) and 3(B) shall be treated as arising under true leases treated under Article 8 and are therefore Unimpaired under the Plan. Classes 3(C), 3(D), 3(E), 3(F) (as to the tractors only), 3(G), 3(H), 3(I), 3(J), 3(L), and 3(M) are Impaired under the Plan and the Holders of such Class 3(C), 3(D), 3(E), 3(F), 3(G), 3(H), 3(I), 3(J), 3(L), or 3(M) Claims are entitled to vote to accept or reject the Plan. Class 3(K) is Unimpaired under the Plan.

### 4.4 Class 4 – Administrative Convenience Claims.

#### 4.4.1 **Treatment**.

The Reorganized Debtor shall pay the Holders of Allowed Administrative Convenience Claims and the Holders of Allowed CV/IC Claims in the amount of $1,000 or less (or Allowed CV/IC Claims whose Holders elect to be included in Class 4 by agreement to reduce the Allowed Amount of such CV/IC Claim to the amount of $1,000), Cash equal to twenty-five percent (25%) of the Allowed Amount of such Allowed Class 4 Claim within 30 days of the Effective Date. Provided, however, that to the extent that the Holder of any Allowed CV/IC Claim elects to be classified in Class 4, such CV/IC Creditor affirmatively agrees to accept the Distribution provided to the Holders of Allowed Class 4 Claims in full satisfaction of any and all Claims against the Debtor and/or the Debtor's Customers for the underlying freight services provided and agrees to be bound by the CV/IC Injunction. Acceptance and negotiation of the Distribution provided on account of Class 4 Claims shall constitute such Holder's consent to be bound by the CV/IC Injunction.

### 4.4.2 Impairment and Voting.

Class 4 is Impaired by the Plan and the Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### 4.5 Class 5 – Performing CV/IC Claims.

#### 4.5.1 Treatment.

The Allowed Amount of Allowed CV/IC Claims of CV/IC Performing Creditors will be paid (i) pursuant to the terms of the CV/IC Settlement Orders entered with respect to such CV/IC Claim or (ii) in the absence of a CV/IC Settlement Order, the Allowed Amount of the Allowed CV/IC Claims of any CV/IC Performing Creditor under any CV/IC Agreement that continues to provide services to the Debtor under the same or more favorable trade and/or credit terms as provided in the CV/IC Agreement shall be paid by the Reorganized Debtor in Cash from the CV/IC Carve-Out or from Cash from future operations (i) within 18 months of the Effective Date or (ii) on such other terms and conditions as may be agreed between the Reorganized Debtor and the Holder of such Allowed CV/IC Claim.

#### 4.5.2 Failure to Provide Services.

To the extent a CV/IC Creditor fails to continue to provide all services, rates, and pricing contemplated under any CV/IC Agreement after the Effective Date, any portion of such CV/IC Creditor's CV/IC Claim that remains unpaid as of the cessation of such services will be treated as a Class 7 General Unsecured Claim and any payments made on such CV/IC Claim prior to the cessation of such services may (i) be offset against any payments that would otherwise be made on account of such Class 7 Unsecured Claim of the CV/IC Creditor and (ii) to the extent in excess of payments that would otherwise be made on account of such Class 7 Unsecured Claim may be recovered as a CV/IC Clawback Recovery.

#### 4.5.3 Release of Avoidance Actions.

To the extent not otherwise released pursuant to a CV/IC Settlement Order, the entry of the Confirmation Order shall act as a release and discharge of the Holder of any Class 5 CV/IC Claims as of the Effective Date from any liability under Section 550 of the Bankruptcy Code with respect to any transfer that may be avoided under Section 547 or 553 of the Bankruptcy Code.

#### 4.5.4 Impairment and Voting.

Class 5 is Impaired by the Plan and the Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

4.6     Class 6 – Non-Performing CV/IC Claims.

    4.6.1    **Treatment**.

        Except as provided in Section 4.6.2, Allowed CV/IC Claims of CV/IC Non-Performing Creditors classified in Class 6 will be satisfied through the Pro Rata Distribution of the Plan Trust Assets on Distribution Dates that shall occur (i) within 120 days of the Effective Date, and (ii) on the First and Second Anniversary Dates.  On the Effective Date, each Holder of an Allowed Class 6 Unsecured Claim will become a beneficiary of the Plan Trust.  The Pro Rata Share of any Distributions that may be made by the Plan Trust on account of any Allowed Class 6 Claim will be calculated as a fraction of the amount of any such Distribution, the numerator of which shall be the Allowed Amount of such Allowed Class 6 Claim and the denominator shall be the aggregate Allowed Amount of all Allowed Class 6 and Class 7 Claims.

    4.6.2    **Determination Procedures**.

        The entry of the Confirmation Order shall act as an injunction as of the Effective Date that shall prohibit and enjoin any act, demand, or proceeding to collect any amount that any CV/IC Creditor or other Creditor of the Debtor may claim or assert is owed by any Customer for freight transported, brokered, billed, or otherwise transacted by the Debtor.  Any CV/IC Creditor classified in Class 6 or otherwise subject to the CV/IC Injunction may seek relief from the CV/IC Injunction by filing a Determination Motion within 60 days of the Effective Date identifying the specific relief sought, including the Customers that such CV/IC Creditor seeks to collect from and providing sufficient documentation for the Reorganized Debtor to evaluate such request, including any contract for carriage or freight transport between the CV/IC Creditor and the Debtor, any contract between the CV/IC Creditor and the Customer, and all Bills of Lading, account statements, invoices that support the assertion of liability by the Debtor's Customers to such CV/IC Creditor.  Such Determination Motion shall be filed with the Court and be served on the Reorganized Debtor, counsel for the Reorganized Debtor, and other parties receiving service via the Court's CM/ECF System.

        The Reorganized Debtor shall have 30 days from the service of a Determination Motion and shall file either a consent to the Determination Motion with respect to all or any portion of the relief requested in the Determination Motion.  To the extent the Reorganized Debtor consents to any portion of a Determination Motion, the CV/IC Injunction will be modified to permit the CV/IC Creditor filing the Determination Motion to exercise any remedies against the Customers identified in the consent.

        To the extent the Reorganized Debtor objects to all or any portion of a Determination Motion, the Court will conduct a Determination Proceeding to determine the nature and extent of such CV/IC Creditor's rights to recovery from any Customer pursuant to applicable contract and law.  To the extent the Bankruptcy Court determines that such CV/IC Creditor would have rights pursuant to applicable law or contract to

pursue any Customer for amounts owed by or asserted as Claims against the Debtor, then, at the election of the Reorganized Debtor, (a) the CV/IC Creditor's Allowed CV/IC Claim shall be treated and paid as a Class 5 Claim or (b) the CV/IC Injunction will be modified to allow such CV/IC Creditor to exercise any available remedies for any portion of the Allowed Amount of its Allowed CV/IC Claim that will not be treated as a Class 5 Claim.

### 4.6.3 **Impairment and Voting**.

Class 6 is Impaired by the Plan and the Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

4.7 Class 7 – General Unsecured Claims.

### 4.7.1 **Treatment**.

Allowed Unsecured Claims classified in Class 7 will be satisfied through the Pro Rata Distribution of the Plan Trust Assets on Distribution Dates that shall occur (i) within 120 days of the Effective Date and (ii) on the First and Second Anniversary Dates. On the Effective Date, each Holder of an Allowed Class 7 Unsecured Claim will become a beneficiary of the Plan Trust. The Pro Rata Share of any Distributions that may be made by the Plan Trust on account of any Allowed Class 7 Claim will be calculated as a fraction of the amount of any such Distribution, the numerator of which shall be the Allowed Amount of such Allowed Class 7 Claim and the denominator shall be the aggregate Allowed Amount of all Allowed Class 6 and Class 7 Claims.

### 4.7.2 **Impairment and Voting**.

Class 7 is Impaired under the Plan and the Holders of any Class 7 Claims are entitled to vote to accept or reject the Plan.

4.8 Class 8 – Intercompany Claims.

### 4.8.1 **Treatment**.

All Intercompany Claims shall be cancelled as of the Effective Date and the Holders of such Claims shall waive any right to distribution on account of such Claims.

### 4.8.2 **Impairment and Voting**.

Class 8 is Impaired and is deemed to have rejected the Plan.

4.9    Class 9 – Equity Interests.

    4.9.1    **Treatment**.

    All existing Equity Interests held in the Debtor shall be cancelled and terminated as of the Effective Date.

    4.9.2    **Impairment and Voting**.

    Class 9 is Impaired and is deemed to have rejected the Plan.

## ARTICLE 5
## MEANS FOR EXECUTION OF PLAN

5.1    Segregation of Effective Date Cash and Effective Date Receivable Assets.

    On the Effective Date, the Debtor's authority to use Cash Collateral shall terminate and all Effective Date Cash and Effective Date Receivable Proceeds subsequently collected will be deposited into a segregated account maintained at Comerica and will be used solely to pay Allowed Claims and fund the Carve-Outs as provided under the Plan.  The business operations of Reorganized CTS, including the ordinary operating costs related to the collection of the Effective Date Receivable Assets will be funded by the Exit Funding.  All invoices for freight services rendered on or after the Effective Date will be billed and invoiced separately by Reorganized CTS under the name of Smith Transport Services or other name distinct from CTS.

5.2    Funding of Post-Effective Date Operations.

    The Reorganized Debtor's operations will be funded by (i) Cash generated from operations, (ii) the Exit Funding, (iii) forty percent (40%) of any Excess Effective Date Proceeds, and (iv) new post-Effective Date accounts receivable financing or other working capital financing.

5.3    Management of the Reorganized Debtor

    On or after the Effective Date, the day-to-day business and affairs of the Reorganized Debtor shall be managed by David Bell, as Chief Operating Officer.  The Board of Directors of the Reorganized Debtor shall be appointed by the Exit Funder.

5.4    Continued Corporate Existence.

    The Reorganized Debtor will continue to exist for at least 120 days after the Effective Date as a corporate entity with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is organized or otherwise formed and pursuant to its articles of incorporation and bylaws or other organizational documents in effect before the Effective Date,

as such documents may be amended by or pursuant to the Plan or pursuant to any amended articles of incorporation or amended bylaws.

5.5     Corporate Action.

All matters provided for under the Plan and/or the Plan Documents involving the organizational structure of the Debtor or action to be taken by, or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any such entities.

5.6     Payments of Claims and Interests.

Except where the Plan contemplates deferred payment, delivery of securities, or some other form of Distributions of Property to be made by the Reorganized Debtor pursuant to the Plan, payments shall be made in Cash, by check, or by wire transfer.

5.7     Addresses for Distributions to Holders of Allowed Claims.

Unless otherwise provided in the Plan, the Plan Documents, or a Final Order of the Bankruptcy Court, Distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  Neither the Debtor nor the Reorganized Debtor shall be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

5.8     Disallowance and Expunging of Paid Claims.

To the extent the Holder of any scheduled Claim that was not scheduled as Contingent, Disputed, and/or Unliquidated, and not otherwise supported by a filed Proof of Claim, or that timely filed a Proof of Claim, to the extent such scheduled or filed Claim was paid pursuant to any CV/IC Orders, such Claim shall be disallowed and expunged to the extent paid.  The Confirmation Order shall constitute an Order:  (a) disallowing and expunging all Claims disallowed pursuant to this Section 5.8, (b) disallowing all Claims to the extent such Claims are not allowable under any provision of Section 502 of the Bankruptcy Code including, but not limited to, time-barred Claims, and Claims for unmatured interest; and (c) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

5.9     Disputed Claims.

5.9.1     **Objection Deadline**.

All objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida

within 60 calendar days of the Effective Date or such later date as may be established by Order of the Bankruptcy Court subsequent to the Effective Date.

### 5.9.2 **Prosecution of Objections**.

On and after the Effective Date, the Reorganized Debtor and the Plan Trustee shall have the authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims. On and after the Effective Date, the Reorganized Debtor shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

### 5.9.3 **Establishment and Maintenance of Reserve for Disputed Claims.**

The Plan Trustee shall maintain the Disputed Unsecured Claims Reserve equal to the aggregate of any distributable amounts of Cash to which Holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or in such amount as may be estimated by the Bankruptcy Court. The Plan Trustee may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix, or liquidate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed Amounts of such Claims for purposes of establishing the appropriate reserves or Distributions under this Plan. In lieu of estimating, fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Debtor and/or the Plan Trustee and the Holder of a Disputed Claim.

### 5.9.4 **Distributions Upon Allowance of Disputed Claims.**

The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Disputed Unsecured Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made, without interest, in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any Claim against the Disputed Unsecured Claims Reserve or the Reorganized Debtor with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no Holder of a Disputed Claim shall have any right to Distribution on such Disputed Claim except as provided in this Section.

### 5.9.5 **Withholding of Taxes**.

The Reorganized Debtor and/or the Plan Trustee shall withhold from any Property distributed under the Plan any Property which must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Person entitled to such Property to the extent required by applicable law.

### 5.10 Unclaimed Property.

Any Cash or other Property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto (including any non-negotiated checks) as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the Distributions shall become vested in the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim.

### 5.11 Exoneration and Reliance.

Neither the Debtor nor Reorganized Debtor shall be liable to any Holder of a Claim or Equity Interest or other party with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtor; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (c) the administration of the Plan or Property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence. The Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, respectively, and such reliance shall conclusively establish good faith and the absence of willful misconduct. In any action, suit, or proceeding by any Holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party.

### 5.12 Effectuating Documents and Further Transactions.

The executive officers of the Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5.13    <u>Creation and Administration of Plan Trust</u>.

### 5.13.1  **Establishment of Plan Trust.**

On the Effective Date, the Plan Trust and the Plan Trust Agreement shall be deemed effective without any further action by any party.  The Plan Trust Agreement shall establish the Plan Trust, which shall be a distinct legal entity from the Debtor.  The Plan Trust is intended to qualify as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B.  By virtue of the Plan and the Confirmation Order, as of the Effective Date, the Debtor shall be deemed to transfer, assign, and deliver all of the Estate's right, title, and interest in and to the Plan Trust Assets including the Plan Trust Actions.  The Plan Trustee shall be appointed by Order of the Bankruptcy Court prior to or as of the Effective Date.

### 5.13.2  **Plan Trust Assets.**

On the Effective Date, the right and standing to pursue the CV/IC Clawback Recoveries, actions for avoidance and recovery of transfers under Sections 547 and/or 550 of the Bankruptcy Code that are not released pursuant to Section 4.5.3 of this Plan, and any Cause of Action against BBK (including any Claim against any Professional Liability, Errors and Omissions, or similar insurance) shall vest in the Plan Trust.  Within 60 days of the Effective Date, the Debtor will transfer the Unsecured Carve-Out to the Plan Trust.  Upon collection of all collectible Effective Date Receivables, 20% of any Excess Effective Date Proceeds will be conveyed to the Plan Trust.

### 5.13.3  **Duties of the Plan Trustee.**

The Plan Trustee shall have such duties as may be set forth in the Plan Trust Agreement or elsewhere in the Plan.

The Plan Trust Agreement shall provide for the Plan Trustee to perform duties commonly performed by, and have the powers commonly provided to, such Plan Trustees as set forth in the Plan Trust Agreement, including, among other things, obtaining tax identification numbers for the Plan Trust, preparing and filing appropriate federal and state tax returns for the Plan Trust, opening bank accounts for the Plan Trust, maintaining records pertaining to the units of beneficial interest of the Holders of all Allowed Claims in the Plan Trust, and retaining professionals to represent the interests of the Plan Trust. For purposes of performing all of the foregoing, as well as for purposes of prosecuting to conclusion objections to Claims and Plan Trust Actions only, the Plan Trustee shall have hereunder the status of a representative of the Estate under 11 U.S.C. § 1123.  Until the Bankruptcy Case is closed, the Plan Trustee shall submit any proposed actions or compromises to the Bankruptcy Court as required by the terms of the Plan Trust Agreement, upon notice to the Entities entitled to Notice and such other parties as the Bankruptcy Court may direct including any Holders of Allowed Claims who provide the

Plan Trustee with written notice of their request to receive notice of such activities. The United States Trustee shall not be required to supervise the Plan Trustee, but shall have standing to seek removal of the Plan Trustee.

The Plan Trustee is authorized to retain such professionals as authorized by the Bankruptcy Court, including legal counsel as may be necessary to perform the duties under the Plan, subject to application and the approval of the Bankruptcy Court pursuant to 11 U.S.C. § 327.

### 5.13.4 Federal Income Tax Treatment.

For federal income tax purposes, it is intended that the Plan Trust be classified as a liquidating trust under Section 301.7701-4 of the Procedure and Administration Regulations under Title 26 and that such Plan Trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries (i.e., Holders of Allowed Claims) be treated as if they had received a distribution of an undivided interest in the Plan Trust Assets and then contributed such interests to the Plan Trust.

### 5.13.5 Termination of Plan Trust

The Plan Trust shall terminate as provided in the Plan Trust Agreement.

## ARTICLE 6
## EFFECTS OF PLAN CONFIRMATION

6.1    <u>Discharge and Injunction</u>.

Except as otherwise explicitly provided in this Plan, to the fullest extent allowable under Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan shall discharge the Debtor from (1) all Claims against the Debtor or its Property (including, but not limited to, Claims based upon any act or omission, transaction, or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act, or omission of the Debtor) against, (2) liabilities of the Debtor or its Property (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code), (3) all Liens on any Property of the Debtor, (4) obligations of the Debtor of its Property, and Equity Interests in the Debtor or the Property of the Debtor, whether known to, unknown, or knowable by the Holder thereof, either directly or derivatively through the Debtor, against successors and assigns of the Debtor, based on the same subject matter as any Claim or Equity Interest, in each case regardless of whether or not a Proof of Claim or Proof of Equity Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Equity Interest voted on or accepted the Plan. Except for the obligations expressly imposed by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment, and termination of all such

Claims against, liabilities of, Liens on, obligations of, and Equity Interests in the Debtor and/or Property of the Debtor. In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtor and its Property, as well as any proceedings not yet instituted against the Debtor or its Property, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim, Lien, or Equity Interest or the commencement of legal action or process against the Debtor or against the property of the Debtor.

Furthermore, but in no way limited to the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any Distribution pursuant to the Plan shall be presumed conclusively to have released the Debtor and successors and assigns of the Debtor, from any cause of action based on the same subject matter as the Claim or Equity Interest on which the Distribution is received. This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any Distribution pursuant to the Plan.

6.2     Discharge of Claims and Non-Debtor Releases by Debtors.

**AS A CONDITION OF THE CARVE-OUTS AND COMERICA'S SUPPORT OF THE PLAN, EFFECTIVE AS OF THE EFFECTIVE DATE, DEBTOR AND THE REORGANIZED DEBTOR WILL BE DEEMED TO HAVE FOREVER RELEASED, WAIVED, AND DISCHARGED THE RELEASEES FROM ANY AND ALL CLAIMS, SUITS, CONTROVERSIES, CAUSES OF ACTION, DAMAGES, JUDGMENTS, EXECUTIONS, DEMANDS, COUNTERCLAIMS, COSTS, EXPENSES, THIRD PARTY CLAIMS, CROSSCLAIMS, CHOSES IN ACTION, DEFENSES, PROMISES, DEBTS, RIGHTS, AGREEMENTS, RIGHTS TO REMEDIES, AND LIABILITY WHATSOEVER INCLUDING, WITHOUT LIMITATION, ANY CLAIM UNDER SECTION 506(C) OF THE BANKRUPTCY CODE (OTHER THAN THE RIGHTS OF DEBTOR OR REORGANIZED DEBTOR TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER), WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER LIQUIDATED OR UNLIQUIDATED, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE, INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY DEBTOR, TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO DEBTOR, THE REORGANIZED DEBTOR, THE REORGANIZATION**

**CASE, OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN.**

      6.3    <u>CV/IC Injunction</u>.

**UPON ENTRY OF THE CONFIRMATION ORDER ANY CV/IC CREDITOR OR THEIR AGENTS, EMPLOYEES, AND/OR ASSIGNEES, THAT HAS, MAY HAVE, CLAIMS, ASSERTS, OR MAY CLAIM OR ASSERT ANY APPLICABLE RIGHTS OR ABILITY TO PURSUE OR COLLECT FROM THE DEBTOR'S CUSTOMERS DIRECTLY OR INDIRECTLY ON ACCOUNT OF ANY CLAIMS, LIABILITIES, OR OBLIGATIONS, OR OTHER AMOUNTS CLAIMED TO BE OWED ARISING OUT OF OR IN CONNECTION WITH ANY BUSINESS OR FREIGHT TRANSACTIONS BETWEEN, BROKERED, BY, INVOICED, OR BILLED TO OR FROM SUCH CV/IC CREDITOR AND THE DEBTOR, SHALL BE ENJOINED AND PROHIBITED FROM CONTACTING, MAKING ANY DEMAND UPON, PURSUING, OR OTHERWISE TAKING ANY ACTION TO COLLECT OR FOR THE PURPOSE OF COLLECTING SUCH CLAIMS FROM ANY OF THE DEBTOR'S CUSTOMERS. ANY OTSC INJUNCTION ENTERED DURING THE REORGANIZATION CASE SHALL REMAIN IN FULL FORCE AND EFFECT FOLLOWING THE EFFECTIVE DATE. THE CONFIRMATION ORDER SHALL CONTAIN THE APPROPRIATE INJUNCTIVE LANGUAGE AS DETERMINED BY THE BANKRUPTCY COURT TO EFFECTUATE THE SCOPE AND EXTENT OF THE CV/IC INJUNCTION.**

      6.4    <u>Release by Holders of Claims and Equity Interest Holders</u>.

**EFFECTIVE AS OF THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, IN CONSIDERATION FOR THE OBLIGATIONS OF THE PERSONS SET FORTH BELOW UNDER THE PLAN AND, IF APPLICABLE, DISTRIBUTIONS UNDER THE PLAN, CONTRACTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THE PLAN, EACH HOLDER OF A CLAIM THAT IS NOT A RELEASEE AND EACH EQUITY INTEREST HOLDER AND ANY AFFILIATE OF ANY SUCH HOLDER OF A CLAIM OR EQUITY INTEREST HOLDER (AS WELL AS ANY TRUSTEE OR AGENT ON BEHALF OF EACH SUCH HOLDER OF A CLAIM THAT IS NOT A RELEASEE OR EQUITY INTEREST HOLDER) SHALL BE DEEMED TO HAVE FOREVER WAIVED, RELEASED, AND DISCHARGED (I) DEBTOR, (II) THE REORGANIZED DEBTOR, AND (III) THE RELEASEES FROM ANY AND ALL CLAIMS, SUITS, CONTROVERSIES, CAUSES OF ACTION, DAMAGES, JUDGMENTS, EXECUTIONS, DEMANDS, COUNTERCLAIMS, COSTS, EXPENSES, THIRD PARTY CLAIMS, CROSSCLAIMS, CHOSES IN ACTION, DEFENSES, PROMISES, DEBTS, RIGHTS, AGREEMENTS, RIGHTS TO REMEDIES, AND LIABILITY WHATSOEVER WHETHER FOR TORT, CONTRACT,**

**VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE, INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY DEBTOR, TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO DEBTOR, THE REORGANIZED DEBTOR, THE REORGANIZATION CASE, OR THE PLAN. THE AFFIRMATIVE VOTE BY ANY CREDITOR IN FAVOR OF THE PLAN WILL BE DEEMED TO BE A CONSENT TO THE RELEASES AS CONTEMPLATED HEREIN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN.**

6.5     Exculpation.

To the fullest extent provided under Section 1125(e) of the Bankruptcy Code, Debtor and Comerica and their respective successors, predecessors, control persons, members, agents, and present and former (to the extent each such Person provided services during post-petition period) officers, directors, and employees (and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such Persons) shall neither have nor incur any liability to any Person or Entity (including any Holder of a Claim or Equity Interest) for any pre- or post-petition act taken or omitted to be taken in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, or occurrence of the Effective Date of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other pre-petition or post-petition act taken or omitted to be taken in connection with, or in contemplation of, restructuring of Debtor.

6.6     No Liability for Tax Claims.

Unless a taxing authority has asserted a Claim against the Debtor before the bar date or as allowed under the Bankruptcy Code, no Claim of such authority shall be Allowed against the Debtor for taxes, penalties, and/or interest arising out of the failure, if any, of the Debtor to have filed any tax return, including, but not limited to, any income tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

6.7     Vesting.

Except as otherwise expressly provided in the Plan, on the Effective Date, the Debtor shall be vested with all of the Assets and Property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or Equity Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the

Bankruptcy Court provided, however, at the election of the Exit Funder, the Effective Date Cash Assets and Effective Date Fixed Assets shall vest in the Exit Funder..

6.8    Retention and Enforcement of Claims or Interests.

Except to the extent released pursuant to this Plan or conveyed to the Plan Trust, any rights or Retained Causes of Action or objection to any Claim under any theory of law, including, without limitation, under the Bankruptcy Code, accruing to any Debtor shall remain property of the Debtor pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Confirmation of this Plan and entry of the Confirmation Order shall not (a) constitute an adjudication of any Retained Causes of Action or claim the Debtor may have against any parties, whether known or unknown, asserted or unasserted, contingent or unliquidated, or of the validity of any Claim against any Debtor regardless of whether such party accepts or rejects this Plan or has filed a Proof of Claim in any Reorganization Case; (b) act as *res judicata* or collateral estoppel with respect to any Retained Causes of Action or other claims of the Debtor; (c) otherwise have any preclusive effect with respect to a claim or Retained Cause of Action that any Debtor have or may have prior to the Effective Date. In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Debtor shall retain all Retained Causes of Action available to the Debtor and/or its Estate, and to the fullest extent allowable under applicable law. After Confirmation, the Debtor, and in its sole discretion, shall be entitled to pursue, compromise, or abandon any and all of the Retained Causes of Action.

6.9    Dissolution of Committee.

The Committee will be dissolved on the Effective Date.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.

7.1.1    **Assumption**.

Any executory contracts or unexpired leases that (a) have not been rejected by any Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to reject on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been assumed by the Debtor subject to Sections 7.1.2 and 7.2 below. The Plan shall constitute a motion to assume such executory contracts and unexpired leases. Entry of the Confirmation Order shall constitute approval of such assumptions.

### 7.1.2 **Rejection**.

Notwithstanding anything herein to the contrary, the Debtor may seek to reject certain executory contracts and unexpired leases that will be identified in a motion to reject the same pending on the Confirmation Date.

### 7.1.3 **Reservation**.

Notwithstanding anything herein to the contrary, this Section 7.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

### 7.2 Cure.

At the election of the Debtor, any monetary default under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal quarterly installments commencing on the Effective Date and continuing for one (1) year with interest payable with the final installment(s) and with principal pre-payable at any time with no penalty or premium; (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease; or (d) as determined by Final Order of the Bankruptcy Court. In the event of a dispute regarding the (i) the amount of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

### 7.3 Damages Upon Rejection.

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before the earlier of thirty (30) calendar days following the Confirmation Date or as provided under separate Orders of the Bankruptcy Court. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as an Allowed General Unsecured Claim. The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

# ARTICLE 8
## EFFECTUATION AND SUPERVISION OF THE PLAN

8.1     Jurisdiction.

Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order.  Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor.  Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

8.2     General Retention.

Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the rights of the Debtor to object to or re-examine such Claim, in whole or in part.

8.3     Specific Purposes.

8.3.1   To modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

8.3.2   To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents, and such other documents may be substantially realized thereby;

8.3.3   To assure the performance by the Reorganized Debtor of their obligations to make Distributions under the Plan and the Plan Documents;

8.3.4   To enforce and interpret the terms and conditions of the Plan and the Plan Documents;

8.3.5    To enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights, and powers of the Reorganized Debtor;

8.3.6    To enforce and interpret the terms and conditions of the Plan Documents;

8.3.7    To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor or their Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

8.3.8    To hear and determine all applications of compensation of professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code;

8.3.9    To hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives, and/or agents;

8.3.10  To determine any and all motions pending on Confirmation for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

8.3.11  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

8.3.12  To consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or their Estate;

8.3.13  To determine all questions and disputes regarding title to the assets of the Debtor or their Estate;

8.3.14  To consider, determine, and act on any dispute arising out of or in connection with the CV/IC Injunction;

8.3.15  To enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case; and

8.3.16  To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

**ARTICLE 9**
**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS**

9.1     Conditions to Confirmation.

Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor and Comerica.   These Confirmation conditions are as follows:

9.1.1     **Disclosure Statement**.

The Bankruptcy Court shall have finally approved the Disclosure Statement in a Final Order.

9.1.2     **Confirmation Order**.

The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and **substance acceptable to the Debtor and the Exit Funder.**

9.2     Conditions to Effectiveness.

The Effective Date shall occur on that day which is the first Business Day that is at least fifteen (15) days after the date of entry of the Confirmation Order.   Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor:

9.2.1     **Final Confirmation Order**.

The Confirmation Order (and such related Orders) shall have become a Final Order.

9.3     Waiver.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtor.

## ARTICLE 10
## ACCEPTANCE OR REJECTION OF PLAN

10.1    Each Impaired Class Entitled to Vote Separately.

Each Impaired Class of Claims or Equity Interests receiving a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. The Holders of Allowed Claims in the following Classes are entitled to vote: Classes 2, 3(C) - 3(M), 4, 5, 6, 7, and 8.

10.2    Class Acceptance Requirement.

Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

10.3    Cramdown.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    Revocation of Plan.

The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order. If the Debtor revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

11.2    Headings.

Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

11.3   Due Authorization by Holders of Claims.

Each and every Holder of a Claim who elects to participate in the Distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtor, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

11.4   Time.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

11.5   Transactions on Business Days.

If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

11.6   Payment on Distribution Dates.

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall, instead, be made, without interest, on the next Business Day thereafter.

11.7   Fractional Dollars.

Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding up in the case of $0.50 or more and rounding down in the case of less than $0.50).

11.8   Unclaimed or De Minimis Distributions.

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan.  De minimus Distributions of Cash or Property having a value of less than five dollars ($5.00) shall not be made.

If a Distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, as to such Distribution, within ninety (90) days of the return of such Distribution the amount of Cash attributable to such Distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such Distribution and will not participate in any further Distributions under the Plan.

11.9    Modification of Payment Terms.

The Debtor reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

11.10    Entire Agreement.

The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.    No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

11.11    Confirmation Order.

In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

11.12    Further Authorizations.

The Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions, and/or rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

11.13    Exemption from Securities Laws.

Any New Stock to be issued under the Plan will be issued pursuant to the exemption from the registration requirements of the Securities Act of 1933 (and of equivalent state securities or "blue sky" laws) to the fullest extent permissible as provided by Section 1145(a) of the Bankruptcy Code.

11.14    Transfer Taxes.

The transfer of any Property pursuant to the Plan or the Plan Documents, or the making or delivery of an instrument of transfer under the Plan or the Plan Documents, shall not (and the Confirmation Order shall so provide), to the fullest extent permissible under Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, and/or other similar tax.

11.15    Recordable Order.

The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional Orders, certifications, or other supporting documents.

11.16    Governing Law.

Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

11.17    Severability.

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.18    No Interest.

Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date is to be Allowed on any Claim.

11.19    No Attorneys' Fees.

No attorneys' fees or costs shall be Allowed or paid with respect to any Claim except may be specifically Allowed under Section 506(b) of the Bankruptcy Code and by a Final Order of the Bankruptcy Court.

11.20    Consent to Jurisdiction.

Upon default under the Plan, the Reorganized Debtor consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agrees that it shall be the preferred forum for all proceedings relating to such default.

11.21    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

11.22    Successors and Assigns.

The rights, duties, and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

11.23    Reservation.

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full.  Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such Concession.

## ARTICLE 12
## MODIFICATION OF PLAN

12.1    Modification of Plan.

The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the Holders of Allowed Claims are not materially and adversely affected.

12.2    Notices.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:

Cargo Transportation Services, Inc.
1300 Sawgrass Corporate Pkwy., Suite 110
Sunrise, Florida  33323

With mandatory copies to:

Jennis & Bowen, P.L.
400 North Ashley Drive
Suite 2540
Tampa, Florida  33602

Dated: Tampa, Florida
           August 12, 2011


                                        CARGO TRANSPORTATION SERVICES, INC.


                                        By:    */s/ David Bell*
                                               David Bell, President and COO