UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

CARGO TRANSPORTATION,
SERVICES, INC.

Case No. 8:11-bk-00432-MGW
Chapter 11

Debtor.
_____/

# DECLARATION OF ERIC A.W. DANNER IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED PLAN OF REORGANIZATION OF CARGO TRANSPORTATION SERVICES, INC.

The undersigned, Eric A.W. Danner, declares under penalty of perjury pursuant to the provisions of 28 U.S.C. §1746 that the following statements are true and correct (the "Declaration"):

I. **COMPETENCY OF AFFIANT**

With respect to my competency to testify as to the facts contained in this Declaration in Support of Confirmation:

1. I am Eric A.W. Danner. I am a partner with CRG Partners Group, LLC, which serves as the financial advisor to Cargo Transportation Services, Inc. (the "Debtor" or "Cargo"). In that role, I have personal knowledge of the Debtor's financial books and records of account, payables, and receivables. I am also familiar with the Debtor's *Amended Plan of Reorganization of Cargo Transportation Services, Inc.* (Doc. No. 662) (the "Amended Plan"), the related *Amended Disclosure Statement in Connection with Plan of Reorganization of Cargo Transportation Services, Inc.* (Doc. No. 663) (the "Disclosure Statement"), and the proposed *Second Amended Plan of Reorganization of Cargo Transportation Services, Inc.* (the "Plan").

2. Unless otherwise stated, I have personal knowledge of the facts contained in this Declaration or base this Declaration upon the available books and records of the Debtor (the "Records"). From my observation of the Debtor's practices, I have concluded that the Records are regularly maintained in the course of the Debtor's business and it is the regular practice of the Debtor to create and maintain the Records. The Records reflect, among other things, the Debtor's assets and liabilities, the results of their pre- and post-petition operations and liabilities, and the funds available to pay creditors under the Plan, if confirmed. The Debtor's Records reflect information that is noted in the Records at the time of receipt by persons employed by the Debtor whose duties include the recording of this information.

3. I have reviewed the Plan with David Bell, in addition to Cargo's attorneys and discussed with the attorneys the requirements for confirmation of the Plan pursuant to Section 1129 of Title 11 of the United States Code (the "Bankruptcy Code").

4. Many of the compilations and summaries of historical financial information that have been made of record in the Debtor's bankruptcy case, including the financial information included in the Debtor's monthly operating reports, the Disclosure Statement, and the budgets prepared in connection with the Debtor's request for use of cash collateral, were prepared by me, or persons acting at my direction and under my supervision as employees of CRG, based on information contained in the Records

5. In connection with the formulation of the Debtor's prior and current proposed plans of reorganization, and related disclosure statements, and in connection with the hearing on confirmation of the current Plan, as well as for other purposes in the Debtor's bankruptcy cases, I, together with David Bell, have prepared projections or proforma summaries regarding the Debtor's future operations (the "Projections"). These Projections have been based on both

historical information and certain assumptions David Bell and I have made regarding the Debtor's future operations including, where appropriate, assumptions regarding the Debtors' debt and capital structure following confirmation of a reorganization plan (the "Assumptions"). The Assumptions, where appropriate, together with this Declaration also include the Debtor's best estimates with respect to the total amount of Allowed Administrative Expense Claims, Priority Claims, the CV/IC Class 5 Claims, Unsecured Claims, and use of the Exit Funding contemplated under the Plan.[1]

II. **FORMULATION OF THE PLAN**

1. In formulating a Plan that is in the best interest of, and is fair and equitable to, all creditors and parties in interest, the Debtor's attorneys and the Debtor's management have attempted to: (i) preserve and maximize the value of the Debtor's business assets to preserve the value of the Debtor as a going concern that will provide funds to pay the Debtor's creditors in the priority provided under the Bankruptcy Code; (ii) allow for a greater recovery than would take place in a forced liquidation; (iii) eliminate or, at minimum, resolve in a cost-effective and efficient manner the various disputes and other litigation that threatened to deplete the assets of the Debtor's estate; and (iv) propose in good faith a feasible Plan that can be confirmed and accomplishes the objective of Chapter 11 of the Bankruptcy Code.

2. I prepared the Projections attached as Exhibit "C" to the Disclosure Statement. Based upon the information I have been provided, I believe the Projections remain accurate, on a consolidated operational basis.

3. Additionally, I prepared the Liquidation Analysis attached as Exhibit "E" to the Disclosure Statement, which reflects a liquidation value of $3,523,583, which would result in

---

[1] For the purposes of this Declaration, I have used the defined terms defined in the Plan.

{00164087.DOC;2}
Page 3 of 5

no distribution to Administrative Expense claimants or Unsecured Creditors. I believe the Liquidation Analysis still accurately reflects the likely outcome of a liquidation of the Debtor.

4. In analyzing the Debtor's liquidity sources and uses of funds, I have prepared a chart attached as **Exhibit "A"** (the "Liquidity Chart"), which estimates how the Debtor's Effective Receivable Assets and Effective Date Cash will be used during on the Effective Date and sixty (60) days thereafter, in fifteen (15) day increments, to satisfy the OCB Accounts Payable, the OCB Accrued Expenses, the Administrative Carve-Out, the CV/IC Carve-Out, the Unsecured Carve-Out, and Comerica. The Liquidity Chart projects that the collection of Effective Date Receivable Assets, in an ordinary course of business environment, during the sixty (60) days following the Effective Date will total approximately $6,372,714. From the Effective Date Receivable Assets and the Effective Date Cash, the following projected disbursements are expected to be paid:

OCB Accounts Payable - $1,950,000

OCB Accrued Expenses - $425,000

Administrative Carve-Out - $750,000

CV/IC Carve-Out - $800,000

Unsecured Carve-Out - $500,000

During the sixty (60) days following the Effective Date, Comerica is projected to recover $3,291,901 from the Comerica Base Receivable Proceeds, Effective Date Cash Assets, Effective Date Fixed Assets, the Shareholder Note Purchase, and ninety percent (90%) of the Excess Effective Date Proceeds.

5. In preparing the Projections and evaluating the feasibility of the Plan, I have also prepared the assumptions or estimates of Allowed Administrative Expense Claims (net of

{00164087.DOC;2}

Page 4 of 5

amounts previously authorized to be paid by the Debtor), based on the projections attached as **Exhibit "B,"** which demonstrate administrative solvency based on my understanding of the agreements the Debtor has reached with various non-ordinary course of business Administrative Expense and Professional Fee Claims.

This concludes my Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 14th day of September, 2011.

By: _____
Eric A.W. Danner, Financial Advisor

{00164087.DOC;2}

Page 5 of 5

**Cargo Transportation Services, Inc.**
Draft Projected Liquidity Sources & Uses of Funds
8/31/2011 Draft Figures

| Category | Effective Date | Period: Day 1 - 15 | Day 16 - 30 | Day 31 - 45 | Day 46 - 60 | Totals |
|---|---|---|---|---|---|---|
| Opening Effective Date Receivable Assets | 6,372,714 | 6,372,714 | 5,098,171 | 3,823,628 | 1,911,814 | 6,372,714 |
| Less: Collection of Effective Date Receivable Assets | - | (1,274,543) | (1,274,543) | (1,911,814) | (1,911,814) | (6,372,714) |
| Remaining Effective Date Receivable Assets | 6,372,714 | 5,098,171 | 3,823,628 | 1,911,814 | - | - |
| | | | | | | |
| Opening OCB Accounts Payable | 1,950,000 | 1,950,000 | 975,000 | - | - | 1,950,000 |
| Less: Payments of OCB Accounts Payable | - | (975,000) | (975,000) | | | (1,950,000) |
| Remaining OCB Accounts Payable | 1,950,000 | 975,000 | - | - | - | - |
| | | | | | | |
| Opening OCB Accrued Expenses | 425,000 | 425,000 | - | - | - | 425,000 |
| Less: Payments of OCB Accrued Expenses | - | (425,000) | - | - | - | (425,000) |
| Remaining OCB Accrued Expenses | 425,000 | - | - | - | - | - |
| | | | | | | |
| Opening Effective Date Cash | 1,098,843 | 348,843 | 135,266 | 86,962 | 399,755 | 1,098,843 |
| Plus: Collection of Effective Date Receivable Assets | - | 1,274,543 | 1,274,543 | 1,911,814 | 1,911,814 | 6,372,714 |
| Less: Payments of OCB Accounts Payable | - | (975,000) | (975,000) | - | - | (1,950,000) |
| Less: Payments of OCB Accrued Expenses | - | (425,000) | - | - | - | (425,000) |
| Less: Administrative Carve-Out | (750,000) | - | - | - | - | (750,000) |
| Less: CV/IC Carve-Out | - | - | - | - | (800,000) | (800,000) |
| Less: Unsecured Carve-Out | - | - | - | - | (500,000) | (500,000) |
| Available Interim Effective Date Cash | 348,843 | 223,386 | 434,809 | 1,998,776 | 1,011,569 | 3,046,557 |
| Less: Comerica Base Receivable Proceeds | - | (88,120) | (347,847) | (1,599,021) | (965,012) | (3,000,000) |
| Ending Effective Date Cash | 348,843 | 135,266 | 86,962 | 399,755 | 46,557 | 46,557 |
| | | | | | | |
| Available Interim Effective Date Cash | N/A | 223,386 | 434,809 | 1,998,776 | N/A | |
| Less: 10% of Remaining Unpaid OCB Accounts Payable & OCB Accrued Expenses | N/A | (97,500) | - | - | N/A | |
| Excess Interim Effective Date Cash | N/A | 125,886 | 434,809 | 1,998,776 | N/A | |
| 70% of Excess Interim Effective Date Cash | N/A | 88,120 | 347,847 | 1,599,021 | N/A | |
| | | | | | | |
| Comerica Recovery | | | | | | |
| Comerica Base Receivable Proceeds | - | 88,120 | 347,847 | 1,599,021 | 965,012 | 3,000,000 |
| Effective Date Cash Assets | 125,000 | - | - | - | - | 125,000 |
| Effective Date Fixed Assets | 100,000 | - | - | - | - | 100,000 |
| Shareholder Note Purchase | 25,000 | - | - | - | - | 25,000 |
| 90% of Excess Effective Date Proceeds | - | - | - | - | 41,901 | 41,901 |
| Total Comerica Recovery $ | 250,000 | 88,120 | 347,847 | 1,599,021 | 1,006,914 | 3,291,901 |

**Cargo Transportation Services, Inc.**
Draft Projected Administrative Expense Claims
10/1/2011 Effective Date

EXHIBIT "B"

| Creditor | Creditor Role | Filed Administrative Claim $ | Projected Effective Date Unpaid Administrative Claim Reserve $ | Projected Effective Date Payment $ |
|---|---|---|---|---|
| **Administrative Expense Carve-Out** | | **750,000** | **750,000** | **750,000** |
| **Allowed Non-Professional Administrative Expenses** | | | | |
| M&I Transportation | Service Provider to Debtor | 24,234 | 24,234 | 24,234 |
| Ryder Transportation | Service Provider to Debtor | 68,429 | 68,429 | 68,429 |
| U.S. Trustee | United States Trustee's Office | 20,000 | 20,000 | 20,000 |
| *Sub-Total* | | *112,663* | *112,663* | *112,663* |
| **Reserve for Disputed Non-Professional Administrative Expenses** | | | | |
| Ashley | Landlord to Debtor | 23,422 | 12,000 | 12,000 |
| ERT Group | Software service provider to Debtor | 32,761 | 23,500 | 14,500 |
| Transport International Pool | Equipment Financier to Debtor | 84,385 | 22,500 | 22,500 |
| *Sub-Total* | | *140,568* | *58,000* | *49,000* |
| ***Sub-Total Non-Professional Administrative Expenses (including Disputed Expenses)*** | | ***253,231*** | ***170,663*** | ***161,663*** |
| ***Remaining Administrative Expense Carve-Out for Professional Fees*** | | ***496,769*** | ***579,337*** | ***588,337*** |
| **Professional Fees & Expenses** | | | | |
| Bodman PLC | Secured Lender's Counsel | 183,884 | - | - |
| Broad & Cassel | Secured Lender's Local Counsel | 237,756 | - | - |
| CRG Partners Group, LLC | Debtor's Financial Advisor | 435,252 | 135,000 | 114,750 |
| DLA Piper LLP | UCC's Counsel | 288,000 | - | - |
| Englander & Fischer, LLP | Debtor's Special Litigation Counsel | 42,000 | 42,000 | 25,200 |
| Hill Ward Henderson | UCC's Counsel | 65,000 | 65,000 | 55,250 |
| Hunton & Williams LLP | UCC's Counsel | 185,139 | 154,000 | 130,900 |
| Jennis & Bowen, PL | Debtor's Counsel | 324,651 | 100,000 | 85,000 |
| Ruden McClosky | Debtor's Co-Counsel | 57,409 | 25,000 | 21,250 |
| Stichter Riedel Blain & Prosser PA | Debtor's Counsel | 350,420 | 174,256 | 148,118 |
| *Sub-Total* | | *2,169,511* | *695,256* | *580,468* |
| **Administrative Expense Carve-Out Excess/(Shortfall)** | | **(1,672,742)** | **(115,919)** | **7,869** |